(Decided 15th July, 1879.)

---

ISRAEL REIFF, JOHN HORST and DANIEL CEARFOSS, Trustees *vs.* SAMUEL E. HORST.

*Case of a declaration of Trust as to Money, established by Parol evidence—The effect of Contrariety in the Testimony of a witness to be weighed by the Jury.*

A. gave to his son-in-law B. the sum of $400, and eleven years afterwards gave him an additional sum of $2000, upon the verbal understanding and agreement between them, that B. should hold

the latter sum, and also the sum of $400, previously received, for the benefit of the grandchildren of A., (B's children) to be paid to them with interest. B. afterwards sold a farm to C., who was one of his children and grandchild of A., and agreed with him, that $1000 of the purchase money should be allowed to stand in the farm as C's portion of the moneys A. had placed in B's hands. After the sale and conveyance of the farm, B. assigned to trustees for the benefit of his creditors all his property, including bonds, notes, *choses in action* and accounts, with power to sue for and recover the same. In an action brought by the trustees against C. to recover the $1000, as an unpaid balance of the purchase money for said farm, it was HELD:

1st. That the character of a trust was impressed upon the sum of $400 by the agreement of B., to hold that amount for the same purposes for which he received the $2000 from his father-in-law, viz., in trust for his children.

2nd. That any contrariety between A's statements of the declarations of the trusts in his examination in chief, and in his cross-examination, were to be weighed by the jury, who were to determine how far his testimony was to be relied on.

APPEAL from the Circuit Court for Washington County.

The case is stated in the opinion of the Court.

*First Exception.*—At the trial the plaintiffs offered the following prayers:

1. If the jury find that in 1845 the sum of $400 was obtained by Abraham Horst from Peter Eshleman, and that both parties treated the sum so given as a gift, and not as a loan or as a trust at that time; and that some eleven years afterwards the said Horst got the sum of $2000 more, not as a loan, but as a fund, to be held in trust. by him for his children; and then for the first time it was agreed and understood, that the $400 previously given, should also be treated and held as in trust, the same as the $2000, then the jury are instructed that these facts are insufficient to create a trust in the said $400.

2. And if the jury find that in 1856, Abraham Horst received the sum of $2000, as a fund or advancement to

Reiff, *et al.*, Trustees *vs.* Horst.

him, to be held by him for the benefit of his wife during her life, and after her death to be divided among her children; and further find, that afterwards his wife died, then from the time of her death, and not before, the said fund was held in trust for her children; and if they find that the money was to be equally divided among the children, they will ascertain each child's share, with interest from the time of the mother's death down to March 25th, 1875, the date of the deed; and if they find that a sum of money greater than each child's share, was left in the farm bought in 1875, by the defendant from Abraham Horst, they will find for the plaintiffs the difference between what was each child's share as aforesaid, to March 25th, 1875, and the amount actually left in the farm, and unpaid by the defendant therein.

3. If the jury find from the evidence that the defendant purchased the farm mentioned by the witness, from his father, Abraham Horst, in March, 1875, for the sum of $8600, and that about ten days or two weeks before said purchase, the defendant told the witness, John S. Horst, that he had been talking to his father about the purchase, and that he told his father that he would take the farm at $8600, if he would leave $1000 in it; and that after he had purchased the farm, and about the last of March, 1875, the defendant told the witness, John Frantz, that he had complained to his father that he had bought the farm too dear, and that his father had taken off $1000; and that said Frantz asked the defendant whether he did not claim some money in that farm on account of his mother, and that the defendant answered only that he had complained to his father that the farm was too dear, and that his father had taken off $1000; that the defendant, about one month after he had bought the farm, asked the witness, John Strite, whether he did not think that he had bought the farm too dear, at $90 per acre, and Strite said no; and that the defendant then said to Strite,

well, he leaves $1000 stand; then there is evidence from which the jury may find that the $1000 in controversy in this cause, was the money of Abraham Horst; and if the jury should further believe and find, that the said sum of $1000, was the money of said Abraham Horst, and was so treated by the defendant and said Abraham Horst, at the time of the purchase, and that said Abraham Horst was then insolvent and unable to pay his debts, and that he executed the deed of July 10th, 1876, offered in evidence, then the plaintiffs are entitled to recover the sum of $1000, and also interest thereon, in the discretion of the jury.

4. If the jury find that the farm mentioned in the deed read in evidence, was purchased by the defendant for $8600, with the understanding that the vendor was to leave the sum of $1000, as a debt due by the purchaser, remaining in the farm, and that the defendant took the farm on these terms, and has not paid the said sum of $1000, and then find the execution of the deed of the 10th July, 1876, read in evidence, then the plaintiffs are entitled to the said sum of $1000, with interest, in the discretion of the jury.

5. The jury are instructed that the evidence before them in relation to the sums of $400 and $2000, as detailed by Abraham Horst, and Samuel Horst, the defendant, are not sufficient to establish a trust, and did not create the said Abraham Horst a trustee of that fund for the benefit of his children. And if they find that the farm described in the deed of 25th March, 1875, was sold by Abraham Horst to the defendant for $8600, and that the said sum of $8600 has not been paid in full; and further find, that afterwards the said Abraham Horst made to the plaintiffs the deed of the 10th July, 1876, read in evidence, then the plaintiffs are entitled to recover in this action whatever sum of the said $8600 was not paid by the defendant.

And the defendant offered the following prayers:

1. If the jury believe that Abraham Horst and the defendant, before the assignment to the plaintiffs, entered into a parol or verbal agreement for the sale of the land to the defendant, and at the same time agreed that the said Abraham had in his hands $1000 of the moneys of the defendant, as one of the grandchildren of Peter Eshleman, and that before the execution of the deed it was agreed between them that said $1000 should be regarded as part payment of the purchase money for said land, and that in pursuance of that understanding and upon that condition, the defendant agreed to purchase and afterwards received the deed for the land; and shall further find, that all the purchase money has been paid by the defendant in accordance with their said agreement, considering said $1000 as part payment, then the plaintiffs are not entitled to recover anything on account of purchase money for said land.

2. If the jury believe from the evidence that Peter Eshleman, in or about the year 1845, gave Abraham Horst, $400, and afterwards, in the year 1856 gave the said Abraham $2000 more, with an understanding and promise on the part of the said Abraham, and as a condition upon which he received the said $2000, to pay the said sums of money, with interest thereon, to the children of the said Abraham, and who were the grandchildren of the said Peter Eshleman; and further believe that the said Abraham Horst, in a negotiation for the sale of a farm to the defendant, (who was one of the five children of the said Abraham, and one of the said grandchildren of the said Peter Eshleman, if the jury so find,) agreed and determined to allow, as part of the purchase money therefor, the sum of $1000 as the defendant's share of said money, and the interest thereon, received as aforesaid from the said Peter Eshleman, and did so allow the said $1000 in the purchase of the said farm in March, 1875, then the plaintiffs cannot recover the said $1000 so allowed in this action.

3. If the jury find from the evidence that Peter Eshleman gave to Abraham Horst the sum of $400 in the year 1845, and the sum of $2000 in the year 1856, and that when the said Abraham received the said last mentioned sum of money, he promised and agreed, as a condition upon which he received it, to pay both of said sums of money to his children, who were also the grandchildren of the said Peter Eshleman, and that the defendant is one of the said children, that then there was a moral obligation on the part of the said Abraham Horst to pay the defendant his part of the said money, with interest thereon, and the payment of the same was not fraudulent, even if they do believe that the said Abraham Horst was insolvent at the time he made the said payment.

4. If the jury believe that Abraham Horst gave or sold to the defendant a reaper in the year 1870, the plaintiffs cannot recover for the same in this cause, unless the jury further find from the evidence that the defendant promised to pay for the same within three years from the bringing of this suit.

The Court (MOTTER and PEARRE, J.,) granted the third and fourth of the plaintiff's' prayers, and rejected their first, second and fifth, and granted the prayers of the defendant.

The plaintiffs excepted, and the verdict and judgment being against them, they appealed.

The cause was argued before BARTOL, C. J., BOWIE, MILLER, and ROBINSON, J.

*Wm. Kealhoffer,* for the appellants.

In order to the establishment of a trust, it is fundamental and elementary that the fiduciary words must be *imperative* on the trustee.

There must be no discretion in him to do or not to do the thing recommended or desired. Discretionary expres-

sions which leave the application, or non-application of the subject, to the objects contemplated, entirely to the mere option or caprice of the alleged trustee, prevent a trust from attaching.

See second rule laid down by the editors of *Hill on Trustees*, 73, (*4th Am. Ed.*); also cited at third note, *Perry on Trustees, sec.* 114.

The question to be determined in this case, really is, whether the donor, Eshleman, intended to impose an obligation on Horst to carry out his wishes at all events; or whether having expressed his wishes or intentions, he nevertheless left it to Horst to act on them or not, at his discretion? If the latter, then no trust was created. *Perry on Trusts, sec.* 114; *Williams vs. Williams,* 1 *Sim.,* (*N. S.,*) 358; *Gilbert vs. Chapin,* 19 *Con.,* 351; (cited *sec.* 113, *Perry on Trusts.*)

Abraham Horst had manifestly the option of spending this money, which he in fact did, and no effort was made by any one, even while he was in embarrassed circumstances, to secure the payment of it.

In the case of *Wynan vs. Hawkins,* 1 *Brown's Ch. R.,* 179, the Lord Chancellor says: "Where it is uncertain what property is to be given, and to whom, the words are not sufficient, because it is doubtful what is the confidence which the testator has reposed, and where that does not appear the scale leans to the presumption that he meant to fix the whole to the first taker." *Harland vs. Trigg,* 1 *Brown's Ch. R.,* 142; *Morris vs. The Bishop of Durham,* 10 *Ves.,* 536; *Wright vs. Atkyns,* 1 *Turner & Russ.,* (12 *En. Ch. R.,*) 156.

"The subject-matter of the trust must be clearly ascertained as well as the purposes of the trust, and the persons who are to take the beneficial interests. Loose, vague and indefinite expressions are insufficient to create the trust." *Perry on Trusts, sec.* 86, *p.* 59.

Reiff, *et al.*, Trustees *vs.* Horst.

The appellants' first prayer ought to have been granted. It announces a single fundamental and elementary principle of law.

In 1845, Peter Eshleman *gave* to Mr. Horst $400 absolutely, and without any qualification or conditions whatsoever. And Mr. Horst used it as his own. It was not possible to impress that fund with the charge of a trust. Because the declarations of the grantor to create a trust, must be prior to, or contemporaneous with the parting with the thing to be held in trust. For after he has parted with it, he cannot charge it with a trust any more than he can charge it with any other kind of encumbrance. *Brown vs. Brown*, 12 *Md.*, 87; *Adlington vs. Coner*, 3 *Atk.*, 145; *Perry on Trusts, sec.* 77; *Tiffany & Bullard*, 15.

If the trust as set up by Samuel Horst is invalid, and not sufficient in law, then the allowance of $1000, on the sale of the farm by Abraham Horst, is without consideration, and his assignees have a right to recover that amount in this action, and the appellants' fifth prayer should have been granted. *Kipp vs. Hanna,* 2 *Bland*, 28; *Hoge vs. Penn*, 1 *Bland*, 28; *Somerville vs. Stanfield*, 28 *Md.*, 211; *Shedes vs. Rogers*, 3 *B. & Ad.*, 362; *Worthington vs. Bullitt*, 6 *Md.*, 172.

*F. M. Darby* and *H. H. Keedy*, for the appellee.

The trust of $2400 was complete, and when Peter Eshleman, in 1856, gave Abraham Horst the $2000, it was perfectly competent for them to agree that the $400, which was given him in 1845, should be added by Abraham to the $2000, making a fund of $2400, which was to be held by Abraham for the benefit of his children, who were the grandchildren of Peter Eshleman. It was upon the condition that Abraham should add the $400 to the $2000 that Eshleman placed in his hands the $2000, and Abraham accepted the $2000 on that condition.

Reiff, *et al.*, Trustees *vs.* Horst.

As to the certainty and definiteness required to create a trust, see *Hill on Trustees*, 114, *and notes ;* 1 *Perry on Trusts*, sec. 114; *Harrison vs. Harrison's Ex'r*, 2 *Gratt.*, 1.

The plaintiffs' first prayer was properly rejected, because Samuel E. Horst is not to be affected with the technical validity of the trust. He was assured the money was in his father's hands, and he entered into his contract upon the faith of that assurance. And also, because the prayer is not supported by the only evidence in the cause as to the $400 being brought into the trust. Abraham Horst testifies, that in 1856, Peter Eshleman gave him $2000 more, on the following *terms and conditions,* viz., "That he should hold the $2000, and also the $400 given eleven years before, for the benefit of the grandchildren of said Eshleman," &c.

The second and fifth prayers of the plaintiffs were also properly rejected, because they ignore the contract between Abraham and Samuel Horst, and base Samuel's right to the credit of $1000 on his purchase, upon the actual legal right he might have to the fund held in trust by his father ; whereas all the evidence shows that unless he had been allowed the $1000, he would not have purchased the farm.

And besides, as to the fifth prayer, the evidence is sufficient to establish a trust of the $2400, and this prayer is not law. *Smith & Barber, Ex'rs vs. Darby, Guard.*, 39 *Md.*, 269 ; *Wheatley vs. Purr*, 1 *Keen*, 551 ; *McFadden vs. Jenkins*, 1 *Hare*, 463 ; 1 *Phillips*, 153.

The defendant's prayers should be sustained, because they properly leave to the jury the finding of the contract between Abraham Horst and the defendant for the sale and purchase of the farm, and properly declare the law as to the trust established by Peter Eshleman, having respect to the relation of said trust to the said contract, upon which the plaintiffs have sued. *Smith & Barber, Ex'rs vs. Darby, Guard.*, 39 *Md.*, 269; *Dubost, Ex Parte,*

18 *Vesey*, 145; *Gardner vs. Merritt*, 32 *Md.*, 78; ·*Cox vs. Sprigg*, 6 *Md.*, 274.

Bowie, J., delivered the opinion of the Court.

The appellants, as trustees, for the creditors of Abraham Horst, sued the appellee in assumpsit, for money payable by the defendant to the plaintiffs.

The only item of the bill of particulars, in dispute, on this appeal, is the sum of one thousand dollars, claimed as balance due on farm sold by Abraham Horst, to the appellee.

No question arises on the pleadings.

At the trial, the appellant offered five prayers, three of which, the first, second and fifth, were rejected.

The appellee offered four, all of which were granted, to which action of the Court below, the plaintiffs excepted.

The appellee, the defendant below, was the son of Abraham Horst, who was the son-in-law of Peter Eshleman.

The appellants proved, that the appellee, in the year 1875, purchased of his father, A. Horst, a farm for $8600, all of which was paid, except $1000, "which was left standing in the farm." The appellants further proved, that afterwards, on the 10th of July, 1876, Abraham Horst conveyed to the appellants, for the benefit of his creditors, all of his property of every description, including bonds, notes, *choses in action*, and accounts of A. Horst, with power to sue for and recover the same. The appellee proved, by A. Horst, that he had offered to sell the farm to the defendant for $8600, to which defendant at first objected; but afterwards said he would take the farm at that price, provided witness would let the $1000 stand, which defendant said was *his portion* of the moneys his grandfather had placed in witness' hands; witness said he would do that, and the defendant agreed to buy the farm on those conditions; and a few days thereafter, the deed for the farm was executed by the witness to the defendant.

Reiff, *et al.*, Trustees *vs.* Horst.

It was further proved by the same witness, that the defendant paid the purchase money, by cancelling certain notes of the witness, and assuming debts, etc., which, together with the $1000, which witness agreed to pay him from his grandfather's moneys, and which was considered as a part payment of the purchase money for the farm, amounted to the whole purchase money expressed in said deed.

The witness further said, that $1000 of this purchase money, was not paid to him in money for the following reasons:

"That in 1845, the witness, being the son-in-law of Peter Eshleman, the said Eshleman gave him the sum of $400; and afterwards in 1856, the said Eshleman gave him $2000 more, and at the same time, he told Abraham (the witness) that he gave him this $2000, on the following terms and conditions, viz., that he should hold the sum of $2000, and also the sum of $400 given eleven years before, *for the benefit of the grandchildren of the said Eshleman,* to be paid to them, with interest;" that on these terms and conditions, the witness took the money and used it in his business; that in 1858, his wife died; in March, 1875, being the owner of the farm mentioned in the deed, he sold it to his son for $8600, and as a part payment thereon treated $1000 of the purchase money, as due the defendant as his part of the two sums above mentioned, with interest, etc., that there were five children for whose benefit the money was held in trust; and witness and defendant concluded that $1000 was about the fair share of the defendant, and therefore, that sum was allowed him.

Other testimony was offered, on cross-examination of Abraham Horst, and the defendant, tending to show the alleged trust as to the funds received by the father, had never been recognized or executed by him as to his other children, and that the objects and terms of the trust were variant from those stated by the witness A. Horst.

The propositions contained in the appellants' prayers which were rejected, concisely stated, are

1st. That if the jury believe that Eshleman, the father-in-law of Abraham Horst, gave his son-in-law four hundred dollars in 1845, absolutely as a gift, and that eleven years afterwards, Horst received the sum of $2000, not as a loan, but as a ·fund to be held in trust by him for his children; and then for the first time it was agreed and understood, that the $400 previously given, should also be treated and held as in trust, the same as the $2000, then the jury are instructed that these facts are sufficient to create ·a trust in the said $400.

2nd. If the jury find that Abraham Horst received $2000 as a fund to be held for the benefit of his wife during her life, and after her death to be divided among her children, and that after his wife died and not before, the fund was held in trust for her children; and the money was to be equally divided between them, they (the jury) will ascertain each child's share, with interest from their mother's death to the date of the deed; and if they find a sum greater than a child's share was left in the farm, bought by defendant of A. Horst, they will find for the plaintiffs for such difference.

3rd. That there was no evidence sufficient to establish a trust as to the sums of $400 and $2000 respectively between Abraham Horst and Samuel Horst, and A. Horst was not a trustee for those sums, and if they find the farm was sold by the former to the latter for $8600, which was not paid in full, and that A. Horst afterwards made to the plaintiffs the deed of the 10th of July, 1876, the plaintiffs are entitled to recover whatever portion of the purchase money remains unpaid.

The first and third propositions, which are the substance of the appellants' first and fifth prayers, are founded upon the theory that the evidence is not sufficient to establish a trust in either of the sums, said to have been advanced by Eshleman.

. The second proposition, which is the appellants' second prayer condensed, assumes that if a trust is proved, then in the event that more money remains unpaid on the farm, than the defendant's share of the trust money, the appellants are entitled to recover the difference. The trust is not assailed upon the ground that it was in fraud of creditors, but because the terms in which it was declared, are not certain and imperative.

The authorities fully sustain the appellants' position, that the trust must be declared in terms " clear and explicit, and point out with certainty both the subject-matter of the trust and the person who is to take the beneficial interest," *Perry on Trusts, secs.* 77, 86, but the appellants' first prayer does not present any such objection. It assumes that the trust, as to the sum of $2000, was to be held by Abraham Horst, " in trust for his children," but declares that if the jury should find, " and then for the first time it was agreed and understood, that the $400 previously given should also be treated and held as in trust, the same as the $2000, then the jury are instructed that these facts are insufficient to create a trust in the said $400."

The grounds of objection to the trust as to the item of $400, indicated in this prayer, are 1st, it was an absolute gift, 2nd, eleven years elapsed, between the gift, and the agreement between the father-in-law and son-in-law to convert it into a fund for the benefit of the children.

"All persons, ' *sui juris* ' have the same power to create truts that they have to make a disposition of their property." *Perry on Trusts, p.* 15, *sec.* 28.

It does not require a valuable consideration to make such trusts binding between the trustee and *cestui que trust.* Yet if such consideration was necessary, an agreement between two persons, in the relation of father-in-law and son-in-law, in behalf of their common descendants, to raise a fund for their benefit, would be both a good and

Reiff, *et al.*, Trustees *vs.* Horst.

valuable consideration, and if *bona fide,* binding on all the world. There is no doubt of the legal competency of a father to declare himself a trustee of a particular sum, in favor of his children.

As to declarations of trust of personal property, it is said in that standard work upon the *Equitable Jurisdiction of the Court of Chancery* by *Spence,* " It seems to be agreed, as a general rule, that if a person effectually declares himself, or his debtor, to be trustee for another of the money or property to be recovered, whether in writing or (as trusts of personal estate are capable of being created without writing,) by acts and declarations of a decisive and definite nature sufficiently proved, the transaction will be binding against him and his representatives, and this, whether the property be recoverable by the party himself, or by a trustee for him. The doctrine, said the Vice-Chancellor Wigram, is not confined to cases where the legal interest is conferred or acquired in pursuance and execution of an antecedent agreement or direction leading to the uses or trusts of that property, it extends to all cases where the transaction is complete; that is, where the declaration by the party entitled, whether legally or equitably, shows a definite intention by that act, at once to denude himself of all beneficial interest in the subject in favor of another." 2 *Vol., p.* 897, *in mar.; Bayley vs. Boulcott,* 4 *Russ.,* 347 ; *Bell vs. Cureton,* 2 *My. & K.,* 503 ; *Jones vs. Croucher,* 1 *Sim. & S.,* 315, *and* 1 *Hare,* 461; *note C., Sp. Eq.,* 897.

The character of a trust was impressed upon a sum of $400 by the agreement of Abraham Horst, to hold that amount, for the same purposes for which he received the $2000 from his father-in-law, viz., " in trust for his children." It is not too much to say, that the one was the consideration for the other. There is no uncertainty in the subject-matter or the object of the trust, nothing optional or indecisive as set out in the prayer.

In the testimony of A. Horst, there is some contrariety between his statements of the declaration of the trust in his examination-in-chief and in his cross-examination. These discrepancies were to be weighed by the jury. They are to determine how far his testimony was to be relied on.

There is no reference to the testimony in the appellants' first prayer, except so far as its substance is partially embodied therein, in relation to the first item of the alleged trust fund.

We think therefore, that the appellants' first prayer was properly refused.

If we are correct in this conclusion, it follows almost necessarily, that the appellants' second and fifth prayers, which constitute their second and third propositions should be refused.

Both of these virtually declare there was no sufficient evidence of a trust existing as to the funds in question, as to which the defendant was entitled to a share, and which as testified by his father, was to be deducted from the price of the land, or credited as part payment of the purchase money.

There was, in our opinion, competent testimony to establish the existence of a trust for the benefit of the grandchildren of Eshleman, in both items ; and if the jury believed the evidence, the defendant was entitled to an allowance for his share of the fund, with such interest as the jury might allow.

The defendant's prayers being the reverse of the propositions above considered, it follows that they were, in our opinion, properly granted.

*Judgment affirmed, with*
*costs to the appellee.*

(Decided 15th July, 1879.)