J. HENRY SCHROEDER, Administrator of CATHERINE LOEBER, deceased *vs.* JOHN LOEBER.

*Husband and Wife—Separate estate of Wife—Loan to Husband—Statute of Frauds—Relief in Equity—Appeal from Court of Equity—Procedure in Appellate Court—Equity jurisdiction.*

Where a wife advanced money to her husband which he undertook to invest for her benefit, in the erection of certain houses on land that belonged to him, under a verbal agreement between them, the administrator of the wife, on a bill in equity against the husband, will be entitled to have a decree for the amount received by him, although the agreement was void under the Statute of Frauds.

Under section 34 of Article 5 of the Code, which provides that on appeal from a Court of equity no objection to the competency of a witness, or the admissibility of evidence, or the sufficiency of the averments of the bill, shall be made in the Court of Appeals, unless it shall appear by the record that such objection was made by exceptions filed in the Court below, the Court of Appeals will decree according to the evidence in the record, without regard to the averments in the bill of complaint.

The jurisdiction of equity is not divested by a statute which gives a Court of law power over the same subject.

APPEAL from the Circuit Court No. 2, of Baltimore City.

This appeal was taken from the decree of the Court below, (PHELPS, J.,) dismissing the bill of complaint. The case is stated in the opinion of this Court.

The cause was argued before ALVEY, C. J., ROBINSON, IRVING, BRYAN, FOWLER, and McSHERRY, J.

*L. P. Hennighausen,* and *M. R. Walter,* for the appellant.

Schroeder, Adm'r *vs.* Loeber.

*S. S. Field,* and *Samuel Regester,* for the appellee.

The following authorities were cited: 1 *Perry on Trusts,* secs. 78, 79; *Gibson vs. Foote,* 40 *Miss.,* 792; 1 *Perry on Trusts, secs.* 128, 132; *Hill vs. Hill,* 38 *Md.,* 183; *Grover & Baker Sewing Machine Co. vs. Radcliff,* 63 *Md.,* 502; *Taylor vs. Brown,* 65 *Md.,* 366; *Schouler on Husband and Wife, secs.* 248–249; *Edelin vs. Edelin,* 11 *Md.,* 415; *Thompson's Appeal,* 22 *Pa. State,* 17; *McComas vs. Long,* 85 *Ind.,* 549; *Green vs. Drummond,* 31 *Md.,* 71, 81; *Olcutt vs. Bynum,* 17 *Wall.,* 144; *Thomas vs. Standiford,* 49 *Md.,* 182; *Waters' Lessee vs. Riggin,* 19 *Md.,* 537, 551; *Adams' Equity,* 362; *Small vs. Owings,* 1 *Md. Ch. Dec.,* 363, 368; *Jenkins vs. Middleton,* 68 *Md.,* 540; *Oswald, et al. vs. Hoover,* 43 *Md.,* 360; *Bayne and Wife vs. State, use of Edelin,* 62 *Md.,* 105; 2 *Bright on Husband and Wife,* 259; *Jacobs vs. Hessler,* 113 *Mass.,* 157; *Caton vs. Ridout,* 1 *McN. & G.,* 599–603; *Hardy vs. Van Harlinger,* 7 *Ohio State,* 209–216; 1 *Perry on Trusts, sec.* 113; *Pope vs. Pope,* 10 *Simons,* 1; *Gilbert vs. Chapin,* 19 *Conn.,* 351; *Bodwell vs. Nutter,* 63 *N. H.,* 447; *Smiley vs. Reese,* 53 *Ala.,* 102.

BRYAN, J., delivered the opinion of the Court.

Catherine Rost was a widow with two married daughters, and a son about fifteen years of age. One of her daughters was married to J. Henry Schroeder, and the other to August Schrader. In August, 1882, she intermarried with John Loeber. She died in January, 1890; and letters of administration on her estate have been granted to J. Henry Schroeder. At the time of her second marriage she was possessed of an undivided leasehold interest in a lot of ground in the City of Baltimore, and of a considerable sum of money. The controversy in this case has arisen concerning this money. The administrator of Mrs. Loeber filed a bill in equity against John Loeber, praying that he might be decreed to pay

this money into Court for the benefit of the estate of the deceased, or that it might be declared to be a lien on certain real estate belonging to him and for general relief. The Court below dismissed the bill. The evidence which connects Loeber with the receipt of the money consists entirely of admissions alleged to have been made by him. Mrs. Schrader in answer to the twenty-eighth question testified that in a conversation between Loeber and her husband and herself, "he, (Loeber,) stated that there is no settlement to be made, that what mother had, he had it; then he went off to tell us, and he told us he was pushed for money and in the act of borrowing money, and mother said why not take my money and put it in those houses, and invest it for me, as it only brings three per cent. at the bank, and that way it will bring me work; my husband then asked, did you not give her any writing or proof that she gave you the money; he said it was not necessary to give any writing that he had made a will; that after his death the money that mother had loaned him should be paid out first to her after his death, then she should get her widow's share and the rest be divided among the children." In answering the twenty-ninth question she said "my husband asked him, well, how much money did mother have? Mr. Loeber said she had $8,000 in cash, was his answer; then standing at the window in the sitting-room, pointing to the houses, he said that he had invested the money in those houses, and if I sell them now, I will lose too much money on them, but I intend to do what is right, he said; then he said we had no right to make any fuss about it, that he had a right to it as long as he lived, anyway." On cross-examination she was asked this question: "Are you certain that Mr. Loeber told you he had borrowed money from his wife, or did he say she had given it to him?" and she answered: "I am certain he said he had borrowed the money, and

intended to give it to her back again.'' She was then asked: '' and you are certain that he told you it was exactly $8,000,'' and she answered, ''yes, sir, he said it was $8,000 in cash, were the words that he used.'' August Schrader gives the same account of the conversation with Loeber as was given by his wife. This testimony was given in answer to the fifteenth direct question. He also says in the same answer: ''I then asked him how much did mother have, and he answers eight thousand in cash.'' On cross-examination he said that Loeber did not state that he had received eight thousand dollars from his wife. He said in another portion of his cross-examination that Loeber said he had borrowed money from his wife and that Loeber did not state the amount he invested in the houses, but that he said Mrs. Loeber had eight thousand dollars. He also stated that in an examination in the Orphans' Court, Loeber denied having borrowed any money from his wife. J. Henry Schroeder testifies that Loeber told him that he had received about eight thousand dollars from Mrs. Loeber. The administration account of the estate of John P. Rost, Mrs. Loeber's first husband, was offered in evidence. From that it appears that she received in cash $6287.60, and one-half the commissions; she being administratrix, and Phillip Rost, her brother-in-law, being administrator. Her half amounted to $547.20. All of the witnesses for complainant testify that she had in addition to what she received from her husband's estate, sixteen hundred dollars in bank in her own name. Phillip Rost estimates the money which she had after receiving her share of her first husband's estate as amounting to $8,975.00. And the officers of three Savings Banks testify that at the time of her marriage to Loeber she had deposits in these institutions which amounted to nearly $8,000. These were all drawn out by Mrs. Loeber before her death with the exception of $154.65, which was

Schroeder, Adm'r *vs.* Loeber.

drawn out by Loeber after her death; the account having been previously transferred to the names of Catherine Loeber and John Loeber or the survivor. The sums drawn out amounted to a little more than $8,000.00, inasmuch as the deposits were increased by the accumulation of interest.

The testimony of Mr. and Mrs. Schrader establishes the contract to our satisfaction. John Loeber undertook to invest his wife's money for her benefit in certain houses which belonged to him. The contract was very indefinite in its terms; it is not stated in what manner the investment was to be made, or on what conditions. It is probable that the parties had in mind the life estate which the husband would have in his wife's personalty in case he should survive her, and that they did not intend to change or impair it; but their notions on this subject were vague and inaccurate, and there is an absence of the certainty and precision on this point which are necessary to the formation of a contract. Moreover, the contract, so far as its terms are in any degree clear, was within the fourth section of the Statute of Frauds. It was a parol agreement for an interest in land; by its terms the money was to be invested in real estate and it was therefore in direct conflict with the Statute. *Clabaugh and Landers vs. Byerly,* 7 *Gill,* 362; *Albert and Wife vs. Winn and Ross, et al.,* 5 *Md.,* 77. But it does not follow that the wife ought to lose her money because of the invalidity of the contract for investment. Amidst the uncertainties surrounding the transaction it is distinctly shown that the money was not given to her husband, but that her interest in it was retained and that it was their object to secure it by this investment. The contracts of a husband with his wife in reference to her separate property can be enforced against him by her in equity when properly established. The circumstance that this contract was

verbal, did not extinguish her right to the money, which she advanced to her husband in pursuance of it. And equity would give a remedy in a case of this description even between parties who were not married. In *Green vs. Drummond*, 31 *Md.*, 71, a bill in equity was filed for the specific performance of a parol contract for the purchase of land jointly by two persons. The Court refused specific performance because the contract was within the fourth section of the Statute of Frauds, but as the complainant had advanced a large amount of money on the faith of the parol contract, it was held that he was entitled to relief. The Court said: "In this case it seems to us doubtful whether the appellant could, by any proceeding at law, recover the money paid and advanced by him under the contract; for there he would be met by the provisions of the Statute, which would preclude him from giving evidence of such parol contract. The money not being advanced as a loan to be repaid, but expended in pursuance of the agreement for the joint purchase of land, in order to maintain an action at law to recover back the money, it would be necessary to prove the contract under which it was paid, which he would be precluded from proving by parol, by reason of the provisions of the Statute, and thus his remedy at law might fail and justice be denied. *Anthony vs. Leftwich*, 3 *Rand.*, 259, 260; *White, Adm'x vs. Coombs, Ex'r,* 27 *Md.*, 489. In such case, according to the authorities, a Court of equity ought to give relief, because there is no remedy at law, or a very inadequate and precarious one." And accordingly although the complainant had no lien on the land, the Court decided that he ought to have a decree for the amount of the money which he had advanced. We therefore think that the complainant is entitled to a decree for the amount of money received by John Loeber from his wife under the contract in question. Of course, Loeber will receive in

the course of administration the share of his wife's estate which belongs to him as surviving husband.

Mr. and Mrs. Schrader testified that Loeber said "what his wife had, he had it," and that she had eight thousand dollars; and from this the inference is drawn that he received this amount from her. The other evidence in the cause shows that she had at least this much money, and we think it the just conclusion from the evidence that this was the sum which he received from her on the promise to invest in the houses.

We will reverse the decree of the Circuit Court, and enter a decree in favor of the administrator of Mrs. Loeber for eight thousand dollars, and costs in both Courts.

> *Decree reversed, and*
> *decree for appellant.*

(Decided 28th January, 1892.)


The counsel for the appellee, on the 17th of February, 1892, filed a motion for a re-hearing of the foregoing case, with reasons therefor; and a brief was submitted in support of the motion. The Court disposed of the motion in the following opinion:

BRYAN, J., delivered the opinion of the Court.

In the brief filed by the appellee in support of the motion for re-argument, it is supposed that this Court committed an error in founding its opinion on certain testimony which did not support the averments of the bill of complaint. It was said that the *allegata* and *probata* must correspond; and that in making a decree the Court was confined to what was stated in the bill. The testimony in question was not excepted to, and this Court was therefore bound to give effect to it. The 34th section of Article 5 of the Code provides as follows: "On an

appeal from a Court of equity, no objection to the competency of a witness, or the admissibility of evidence, or to the sufficiency of the averments of the bill or petition, or to any account stated and reported in said cause, shall be made in the Court of Appeals, unless it shall appear by the record that such objection was made by exceptions, filed in the Court from which such appeal shall have been taken." It is no matter whether the averments of the bill cover the case proved in evidence or not; we are obliged to decree according to the matters established by the proof. The section in the Code is made up chiefly of the Act of 1832, chapter 302, section 5. It has been frequently construed, and the practice under it is well established. In *Harwood, et al. vs. Jones,* 10 *Gill & Johnson,* 419, this Court said: "The decree of the County Court, it is said, must be reversed on account of the variance between the allegations in the bill and the proofs in the cause. Whether there be such variance or not, we have deemed it unnecessary to inquire, because, according to our interpretation of the 5th section of the Act of 1832, ch. 302, it is immaterial whether there exist such variance or not; no exceptions having been filed in the Court below, either to the admissibility of the evidence, or the sufficiency of the averments of the bill, the complainant is entitled to an affirmance of the decree in this Court, if warranted by the proof, whether his *allegata* and *probata* correspond or not." In *Oliver vs. Palmer and Hamilton,* 11 *Gill & Johnson,* 442, it was said: "The second point of the appellants is, 'that neither the case stated in the bill, nor the case attempted to be proved, show any title in the complainants to the interposition of a Court of equity. On the contrary, by their own showing they have ample remedy at law." To escape from this objection the appellees have insisted that even if their bill be too inartificially drawn, by reason of an insufficiency in its averments, to entitle them to

Schroeder, Adm'r *vs.* Loeber.

the relief they have sought, yet that the proof in the case having clearly established their right to the interposition of a Court of equity, the appellants are by the 5th section of the Act of 1832, ch. 302, precluded from urging as a ground of reversal, any such defect in the bill.    And if their assumption of the efficacy of the proof offered be correct, we entirely concur in the position they have assumed.    Being of opinion as before stated, that not only by the broad and explicit language of the Acts of 1825, ch. 117, sec. 2, and 1832, ch. 302, sec. 5, are final decrees under the first section of the Act of 1820, ch. 161, embraced, but that upon the soundest principles of equity jurisprudence they ought so to have been.    Does the proof show a case entitling the appellees to relief in equity is the matter to be inquired into?"    This latter case was cited and approved in *Thomas vs. Doub*, 1 *Md.*, 327, and the same effect was given to the Act of 1832 in *Eyler and Matthews vs. Crabbs*, 2 *Md.*, 154.    It is therefore very clear that it was our duty to consider the evidence, and to make such decree as it required without regard to the averments of the bill.    It is also said that the contract stated in the bill was not cognizable in equity but was exclusively within the jurisdiction of a Court of law.    If we are bound to decree according to the proof, this question is of little importance in this case.    It is alleged in the bill of complaint that Catherine Loeber loaned her husband eight thousand dollars on condition that he would pay the money after her death to her children.    The contract was of the kind belonging exclusively to the jurisdiction of a Court of equity.    The death of the wife could not change its equitable character; but merely transmitted to another party the right of enforcing it.    The executor or administrator succeeds to the right of action on personal contracts made with the deceased, and must have the right to sue upon the one now in question before the tribunal having peculiar

cognizance of causes of such a description. Of course the contract enured to the benefit of the children of the deceased wife, and if they had seen fit, they might have brought suit in their own names, and superseded the right of action in the administrator. The authority of *Owings vs. Owings,* 1 *Harris & Gill,* 484, is fully acknowledged, and that of subsequent cases on the same point. The children were the beneficiaries of the contract, and as such were entitled to maintain it before the appropriate tribunal, and to control the litigation respecting it. But surely the party to whom the promise was made on valuable consideration could sue for a breach of it, and this right of action would devolve upon her representative. There can be no conflict of interest in cases of this nature. The party to whom the promise is made is simply a trustee for those beneficially interested. His suit is prosecuted for their benefit, and is subject to their control. We have not overlooked the statutory enlargement of the jurisdiction of Courts of law in matters relating to husband and wife. In *Barton vs. Barton,* 32 *Md.,* 214, it was decided that a widow might maintain an action at law against the executors of her deceased husband on a contract made with him during coverture concerning her separate estate. This would show that an action at law might be brought on the contract averred in the bill. But it is well settled that the jurisdiction of equity is not ousted by a statute which gives a Court of law power over the same subject. This was decided in *Barnes & Ferguson vs. Crain,* 8 *Gill,* 398, and is the established doctrine.

As the statute required that we should make our decision on the evidence in the case, without regard to the averments in the bill of complaint, it would have been useless to remand the cause for the purpose of amending the pleading.

*Motion overruled.*

(Decided 7th April, 1892.)