# CIRCUIT COURT NO. 2 OF BALTIMORE CITY.

Filed March 15, 1897.

FRANK R. WEST, ET AL.,

VS.

THEODORE F. WILCOX, ET AL.

*Samuel Regester* and *S. S. Field* for plaintiffs.

*Richard B. Tippett* for defendants.

HARLAN, J.—

The plaintiffs in this case are two of the former directors of the Merchants and Mechanics' Insurance and Savings Association, a corporation against which a bill for a receiver had been filed by one Evans in this Court in September, 1894. Receivers were appointed under this bill on June 19, 1895. It appears from the evidence that all of the directors were endorsers upon certain notes of the said Association, and that a short time before the receivers were named, the other directors, acting upon an under-

standing existing among themselves, at the time they became endorsers, instructed the defendant, Wheeler, who was one of the directors and the Secreary and General Manager of the Association, to make arrangements to transfer as many of the members or policyholders of the Association as possible to some other like Association for the best consideration obtainable, and secure the proceeds thereof to the liquidation of the notes on which they were endorsers. Policyholders cannot, of course, be so transferred without their own consent, and whether any, or how many, can be induced to transfer must depend upon circumstances, and very largely upon the influence that can be exerted with them by the persons engaged in the transaction. But the agents, in fact, are frequently able to transfer quite a large proportion of their patrons, and the association to which the transfer is made, seems to pay quite liberally for the new business thus brought to it.

The amount of the weekly payments of the members so transferred is called a debit, and when members are so transferred from one company to another, the transaction is designated as the transfer or sale of a debit.

Wheeler testifies that this was to be done "secretly," and that he was directed to make no minutes of the conferences at which the directions were given, "for the reason that they did not want the matter of the sale to appear as act of the board of directors, but as an act of his own," * * * "for fear of an order being passed directing that the money be paid to the receivers instead of to himself, or to the creditors for whom they were endorsers." At all events, Wheeler, in pursuance of the plan, did arrange with the Home Friendly Society for a transfer of the debit on June 12, 1895, by a contract, whereby he was employed as agent of the Home Friendly Society, to be paid.

"A, fifty dollars per week, regular salary," and "B, in addition to the amount to which he is entitled under clause A, an amount, by way of salary, equivalent to sixteen times the amount of the net weekly increase of collectible debit, to be paid in equal monthly instalments, the first instalment to be paid on July 7, 1895, and an instalment to be paid each thirty days thereafter." (Defendant's Exhibit, Exam. No. 1.)

The amount of the debit which he succeeded in transferring was $193.30. (Test., p. 59 and p. 95), and the amount to which he became entitled under clause B, of this contract, was therefore sixteen times $193.30, or $3,092.80. It had been arranged between Wheeler and the other directors that this money should be paid to Theodore F. Wilcox, who would receive it and liquidate the indebtedness, i. e., pay the notes of the association endorsed by the president and directors of the association—(West Test., pp. 78, 79), and accordingly Wheeler on June 17, 1895, gave to Wilcox an order on the Home Friendly Society for the money to become due under this contract, and this order was accepted by the Home Friendly Society, June 19, 1895. Wilcox had agreed to receive the money, and apply it to the paying off of the notes (Talley, Test., p. 54).

On June 19, 1895, as before stated, the receivers were appointed, and directly thereafter, on June 20, 1895, made claim to this money and obtained an *order nisi* restraining Thomas R. Wheeler and Theodore F. Wilcox from making away with, or in any manner, disposing of any money or evidence of indebtedness received on account of the contract between Wheeler and the Home Friendly Society, and restraining the Home Friendly Society from paying over to Thomas R. Wheeler or Theodore F. Wilcox, or any other person than the receivers; any money or evidence of indebtedness on account of said contract. Wheeler employed W. S. Carr and R. B. Tippett as counsel to resist this claim of the receivers, and a demurrer to the petition on which this order was passed was entered. Conferences and negotiations were had between the receivers and the counsel of Wheeler, who also acted for Wilcox and the Home Friendly Society, although employed and to be paid by Wheeler, and these conferences resulted in a new arrangement being made as to the money to be paid for the debit transferred to the Home Friendly Society. The Home Friendly Society, after the proceedings by the receivers, set up some claim that Wheeler had broken his contract, and that it was no longer liable under the accepted order. The new arrangement was consented to by the receivers, by the Home Friendly Society, by Wheeler and by

Wilcox, and was brought about by Mr. Tippett, who acted for and represented all the three latter. But it must be noted that none of the note creditors except Wilcox, and none of the endorsers, except Wheeler, was a party to this arrangement.

On the application of the receivers an order was passed dismissing their former petition, and on the day the order was filed, October 19, 1895, and in pursuance of the new arrangement the Home Friendly Society drew its check for $700.00 to the order of "Theodore Wilcox, Trustee," which check was endorsed by Wilcox to R. B. Tippett, and the proceeds thereof were applied by Tippett as follows: $200 to Mason as attorney for the receivers; $100 to Wheeler, and the balance, $400, to Carr and himself as attorneys for Wheeler. At the same time that the check was given the Home Friendly Society passed its five several promissory notes, each dated September 4, 1895, and all payable to the order of Thomas R. Wheeler, for the amounts, and maturing as follows:

One for $500, payable on or before January 18, 1896.

One for $442.80, payable on or before March 18, 1896.

One for $250, payable on or before April 18, 1896.

One for $200, payable on or before May 18, 1896.

One for $350, payable on or before July 18, 1896.

One for $600, payable on or before November 18, 1896.

These notes, with the exception of the one for $200, which is in the hands of Tippett, were endorsed by Wheeler, and were turned over to Theodore F. Wilcox, to be by him held and collected, and the proceeds applied according to directions received from Wheeler and communicated by his counsel to Wilcox. Under these directions a part of this money was to be applied to some of the notes which were provided for by the first arrangements, but a part was to be otherwise applied, and $700 had already been diverted—$600 to the payment of counsel fees and $100 to Wheeler's own use. The object of the present proceeding was to stop this alleged unlawful diversion of the funds arising out of the transfer of the debit from the purposes for which they were originally intended, and to undo the same so far as it has been accomplished. The plaintiffs, as endorsers on the notes, and now the holders of the bulk of them, ask that Wilcox account for so much of the fund ($700) as has been collected and misapplied, and that the balance be collected and applied to the payment of said notes.

The plaintiff's theory of the case is that the directors having instructed Wheeler to transfer the debit and place the proceeds in the hands of Wilcox to be applied by him to the notes on which they were endorsers, and Wheeler having done so by the accepted order, which Wilcox received, *agreeing* at the time to collect the money from the Home Friendly Society, and apply it to the said notes, he thereby became a trustee for these creditors, and thereafter neither he nor Wheeler, nor the Home Friendly Society, could alter or disregard the trust without the consent of these creditors, and that any person who received part of the trust funds with knowledge that they were impressed with a trust is liable to account for the same. It seems to me this conclusion of law is well founded, and that the facts upon which it rests are established by the evidence. A trust with reference to personal property may be established by parol. A valuable consideration is not required to make such trusts binding between the trustees and the cestui que trust (Ruff vs. Horst, 52 Md. 267), and whether Wheeler was under anything more than the "moral obligation," of which he speaks, to carry out the plan agreed on and place the funds in Wilcox's hands for the note creditors, having done so and the transaction being executed, he could not thereafter authorize a diversion of the trust fund.

26 Am. & Eng. Enc., 56 and N. 3.

The plaintiff would therefore be entitled to appropriate relief, unless the contention of the defendants is sound that they are not in Court with clean hands. As stated in the brief, the question is, "Can the directors of a corporation sell all of its available property (assuming, for the sake of the argument, that the debit spoken of in the testimony is property or an asset), when the corporation is hopelessly insolvent, for the sole purpose of protecting the directors as endorsers on certain notes of the corporation to the

detriment and damage of all other creditors and the policyholders, and prevent the fund going into the hands of receivers under a bill pending in equity?"

If the contention made by the defendant's counsel in another part of his brief is sound, that the debit mentioned in the testimony was in no sense an asset, (and it was upon this theory that these defendants resisted the claim of the receivers to this fund), it is not necessary to consider this present question, because if the fund was not an asset of the Merchants and Mechanics' Insurance and Savings Association, such as would have been passed to its receivers, or could have been sold by them, the action of the directors in arranging with Wheeler to transfer the debit and secure the proceeds for certain creditors lessened the indebtedness without diminishing the assets of the association.

In point of fact, too, this was not all of the available property of the association—even if it was property at all. Nor is the familiar doctrine that directors of a corporation occupy the position of trustees, and "cannot use their position to advance their own individual interests as distinguished from that of the corporation" which is here invoked, available under the facts of this case to bring these plaintiffs, in my judgment, within the proper application of the maxim, *"in pari delicto protior est conditio defendentis."* The most that can be said of this transaction is that it created preferences in favor of certain debits upon which these directors were endorsers. The debts were admittedly just debts; they were for money borrowed, and of which the corporation had the benefit. And so far as the corporation was concerned, whether the money was paid to several or divided among all of its creditors, the effect in diminishing the indebtedness for which it was responsible, was the same. Merely creating preferences among creditors was not, at common law, considered either fraudulent, immoral or illegal. It has been held in this State, that this principle is the same, whether the preference is made by a corporation or by an individual.

State vs. Bank, 6 G. & J. 206, 220.

And although there is direct authority for the proposition that directors,

acting in good faith, may prefer debts upon which they are endorsers.

(Bank vs. Whittle, 78 Va. 737.)

(Blair vs. Steel Co., 159 Ill. 350.)

(Gould vs. R. R., 52 Fed. Rep. 680.)

This is a vexed question, and one which it is not necessary to determine in this case, because none of the cases hold anything more than that such preferences are *voidable* at the instance of creditors, or their representatives, and no creditor, or representative of creditors, is seeking relief in this suit.

I conclude, therefore, that the plaintiffs are entitled to relief.

To what relief are they entitled in this proceeding? The bill asks for an injunction and for general relief, and plaintiffs' counsel, under the latter prayer, asks for a decree against the defendant, Wilcox, for $700, with interest from October 19, 1895, the date of the check of the Home Friendly Society to him, as trustee, and inasmuch as this money passed into the hands of the defendant, R. B. Tippett, with full knowledge that it was a trust fund, it is submitted that the decree for this $700 should also be rendered against Mr. Tippett also; they further ask a decree against the Home Friendly Society for the balance due under clause B of the contract with Wheeler, to wit: $2,342.80, with interest on the several instalments thereof, from the times when they respectively became due; that Mr. Wilcox be directed to surrender the notes held by him, and to endorse and surrender the order of June 17, 1895, and that Mr. Tippett be required to surrender the note held by him; said notes and order to be delivered to the Home Friendly Society upon payment of the amounts above mentioned; and that this fund be distributed under this Court's direction, first to the payment in full of the notes of the Merchants and Mechanics' Insurance and Savings Association which have not been taken up by the plaintiff, Regester, and the balance to be paid to said Regester, and for the purpose of collecting and distributing the same: that the Court appoint a trustee to whom the payments and deliveries above mentioned shall be made.

The bill in this case certainly might have been much more specific in its allegations and in the relief asked, but the evidence from which the facts, de-

tailed in this opinion, appear was not excepted to, and under the doctrine and authority of Schroeder vs. Loeber, it becomes the Court's "duty to consider the evidence and make such decree as *it* requires without regard to the averments of the bill."

75 Md. 195, 201-3.

I am of opinion that the plaintiff is entitled to all the relief asked at the hearing as above set forth, except as to the decree against the Home Friendly Society for $2,342.80. I am well aware of the doctrine, that where equity has once acquired jurisdiction, it will go on and give complete relief, and not turn the parties over to another suit at law, and I think that the doctrine might well be applied in this case had not the plaintiff's counsel disclaimed that this was a suit for the money in his examination of Bernard L. Tally, the president of the Home Friendly Society—(Test., p. 65, 136 Q.). However, as it would seem to me, that there can be no fair reason why the Home Friendly Society should not be as willing to pay this money to the trustees appointed under the authority of this Court, as to Mr. Wilcox, if it is willing to waive the benefit of this disclaimer, I will direct the costs of this case to be paid out of the funds coming to the trustee; otherwise I will direct that the injunction be continued against the Home Friendly Society, and that it shall pay the costs of this proceeding, and that the trustee to be appointed, be given authority to sue for the amount claimed under clause B of the contract with Wheeler.