White, Adm'x, *vs.* Coombs, Ex'r of Devecmon.

*Judgment affirmed.*

(Decided 17th July, 1867.)

---

MARY E. WHITE, Administratrix of THOMAS F. WHITE, *vs.* JOHN S. COOMBS, Executor of THOMAS DEVECMON.

### *Statute of Frauds.*

An action for money had and received, will not lie for the recovery of the proceeds of a sale of land, unless the same is evidenced by some note or memorandum in writing.

APPEAL from the Circuit Court for Allegany County.

This action was brought to recover certain sums of money alleged to be due the estate of the plaintiff's intestate. The declaration contained a count for money received by Thomas Devecmon for the use of Thomas F. White, the plaintiff's intestate, and payable by John S. Coombs, as executor of Thomas Devecmon, and a count for money received by John S. Coombs, as executor of Thomas Devecmon, for the use of Mary E. White, as administrator of Thomas F. White. To this declaration there was a demurrer, which the Court overruled. The defendant then pleaded, to each count in the declaration, "never indebted;" and the parties joined issue on these pleas. The plaintiff then proved, by Miss Annie White, the declaration of Thomas Devecmon that he had sold to Mr. O'Hern a tract of land called "Mount Atlas," for five thousand dollars; that Thomas F. White was entitled to one half of the purchase money, and, subsequently his declaration that twelve hundred and fifty dollars (part of the purchase money) would be paid on the following day, and he would deposit half of it in bank for Mr. White. The plaintiff further proved, by Mr. Michael P. O'Hern, that Mr. T. Devecmon sold him the land for five thousand dollars, that Mr. Devecmon conveyed the land to his daughter, Sarah R. O'Hern, and that he paid Mr. Devecmon twelve hundred and fifty dollars in money, gave him a draft for twelve hundred and fifty dollars, which was paid to Mr. Coombs, the executor, and that the balance of the money was secured, by a deed of trust, to William Devecmon. The plaintiff also proved, by William Devecmon, that he, William Devecmon, wrote a deed for the land conveyed by his brother, Thomas Devecmon, and his wife, to Sarah R. O'Hern, and that his brother told him that Thomas F. White had a half interest in the land conveyed by the deed. The defendant then proved that the legal title to the land sold by Devecmon and conveyed to Miss O'Hern, was in Thomas Devecmon alone.

The plaintiff then prayed the Court to instruct the jury as follows:

1st. If they find, from the evidence in the cause, that Thomas Devecmon in his lifetime told the daughter of Thomas F. White that he had sold to Mr. O'Hern a tract of land for five thousand dollars, and that her father was entitled to one half of the purchase money that he, the said Devecmon, was to receive for said land, and if they find, that said Thomas Devecmon received the sum of twelve hundred and fifty dollars from said O'Hern on account of said land, then they may find for the plaintiff for one half of said sum so received by said Devecmon.

2d. And if they find, in addition to the above facts, that the defendant, after the death of said Devecmon, received on account of said purchase money the further sum of twelve hundred and fifty dollars, then they may find for the plaintiff for the one half of said further sum of twelve hundred and fifty dollars.

3d. If they shall believe from the evidence in the cause, that Thomas Devecmon received the sum of $1250 in his lifetime, and that one half thereof belonged to Thomas F. White, then the plaintiff is entitled to recover one half of said sum so received by Thomas Devecmon.

And the defendant asked the following instructions:

1st. If the jury shall find, from the evidence in the cause, that the patent for "Mount Atlas" offered in evidence, was issued to the defendant's testator, and that the deed offered in evidence from the testator to Sarah R. O'Hern, dated on the first day of November, 1864, was executed by him as it purports, and that part of the purchase money of said tract of land under said deed is sought to be recovered in this case, then the plaintiff cannot recover.

2d. If the jury shall find the facts stated in the first prayer, and also find that defendant's testator, in November, 1864, said, at one time, to the witness, Miss Annie

White, that he had sold a tract of land to O'Hern for five thousand dollars, and that he wanted to get the papers to draw the deed, and that Devecmon said then her father was interested in the matter, for he was entitled to one half of the money, and that he would deposit the half of the first payment of $1250 in the bank, to the credit of her father, and at another time to William Devecmon, that said Thomas F. White had one half interest in said tract, and if they also find, that said Thomas Devecmon, deceased, in his lifetime, did receive said $1250, as part of the purchase money of said tract of land, and that said Coombs, since the death of said Devecmon, received $1250 as part of said purchase money, still the plaintiff cannot recover under the pleadings and evidence in the cause.

The Court rejected the prayers of the plaintiff, and granted those of the defendant; to this ruling of the Court the plaintiff excepted, and the verdict and judgment being against him, he appealed.

The cause was argued before BOWIE, C. J., BARTOL, WEISEL and CRAIN, J.

*J. H. Gordon*, for the appellant, contended:

That the evidence is sufficient to show, that Devecmon had money of Thomas F. White in his hands as money. And that he intended to pay it out of the money to be received from O'Hern. And on this theory the prayers of the plaintiff should have been granted. They should have been granted also, upon the theory of the defendant, that there was a verbal contract, by which White and Devecmon were equal owners of the land, and were to divide the purchase money. Because, if the verbal arrangement had been so far completed, as that the money had been received by Devecmon, and acknowledged by him to belong to White, it was no longer an interest in land, but a right

to the money, to be enforced as any other debt, and no longer affected by the Statute. *Brown on the Statute of Frauds, sections* 116 *and* 117, *and note* 3 ; *Gore vs. Wright,* 8 *Adol. & Ell.,* 118 ; *Cocking vs. Ward,* 50 *E. C. L.,* 858 ; *Greer vs. Vardiman,* 2 *Blackf.,* 331 ; *Boyd vs. Stone,* 11 *Mass.,* 342 ; 3 *Parsons on Contracts,* 24, 35, *note c; Wolfe vs. Hauver,* 1 *Gill,* 84 ; *Mott vs. Hurd,* 1 *Root,* 73, (*Conn.*)

The second prayer of the defendant goes upon the further ground, that the plaintiff could not recover, because there is a misjoinder of counts in the declaration ; one being for money received by the testator, and the other for money received by the executor as executor. This does not prevent a recovery. *Giles vs. Perryman,* 1 *H. & G.,* 164 ; *Browne on Statute of Frauds,* sec. 263.

If the declaration is even defective, still there was error in granting the defendant's first prayer, which does not raise the question of pleading, concedes the sufficiency of the pleadings, and the judgment must be reversed on that ground. *Leopard vs. Canal Co.,* 1 *Gill,* 222 ; *Guy vs. Tams,* 6 *Gill,* 84 ; *Stockton vs. Fry,* 4 *Gill,* 406 ; *Dorsey vs. Dashiell,* 1 *Md. Rep.,* 207.

*William Walsh,* for the appellee.

The money, to recover which this action was brought, was half the purchase money (so far as received) of a tract of land, the legal title of which stood in the name of Devecmon, and which he conveyed to Sarah R. O'Hern. The plaintiff's case assumes that, *in face of the legal title in Devecmon,* his naked verbal acknowledgment, that White was interested in the land, and entitled to one half of the purchase money, is sufficient to authorise a recovery. No proof of any contract or trust in writing,—no proof of any payments or acts done by White, that would give him an interest or claim, or even create an equity in his favor, to any interest in the land or its proceeds. Every action at law proceeds on a right of property in the plaintiff as

its foundation. Suppose the facts in this case were set out in a special count, it would be that Devecmon owned the land and sold it, and promised to give White half the purchase money, and though he had received it, failed to pay White any; could White recover on such a case? Clearly the count would be bad. It shows and can show no interest or title in the property, and no consideration to support the promise of Devecmon. Can the appellant by declaring for money had and received, trample down the legal title to the land, and get half of the land in the shape of money? The appellant's intestate could only make title to the money *through the land. If the land was Devecmon's,* the price of it could not be received *for White's* use. Whoever owned the land, owned the money it was sold for.

The promise of Devecmon to give White half the price of his land was a mere gratuity, and *nudum pactum.* What fact in the cause shows any right in White to anything from Devecmon? Where is the consideration for the promise on which the action of assumpsit is based? In *Vanalstine vs. Wimple,* 5 *Cowen,* 162, the plaintiff had a much stronger case,—facts going to the origin of the property, and a sale by the defendant, and the receipt of the purchase money, and acknowledgment of the plaintiff's right to it, but he could not recover. It is respectfully submitted, that it is an impossibility to frame a declaration on the *facts in this case,* which will sustain an action. The whole case utterly ignores the necessary foundation of all actions, namely: the *property or ownership of the subject matter* which is sought to be recovered. Is half of Devecmon's land to be taken from his estate, because he said White was to have half, and the solemn legal title to be struck down by a *parol declaration,* without a single fact to show that White ever had any connection with the land by work, payment of purchase money, or anything else? The case proceeds on the idea

that White was half-owner of the land with Devecmon,—in the face of the only legal proof all the other way. But it is an established rule of law, that an action for money had and received, will not lie where the right to land comes in question. *Marshall vs. Hopkins*, 15 *East.*, 309 ; *Clarence vs. Marshall*, 2 *Crompt. & Mees.*, 495 ; 1 *Chitty's Pleadings*, 352, 11*th American Edition ;* 2 *Green'l Ev.*, sec. 120, *and note* 2 ; *Lindon vs. Hooper, Cowper*, 418 ; *Wheeler vs. Horne, Willes' Rep.*, 208 ; *Miller vs. Miller*, 7 *Pick.*, 133 ; *Boston vs. Binney*, 11 *Pick.*, 1 ; *Baker vs. Howell*, 6 *Searg. & R.*, 481; *Dugan vs. Gittings*, 3 *Gill*, 140, 162.

The plaintiff's case is a bold attempt to leap over the Statute of Frauds, and establish a right to half the tract of land by a parol declaration of the legal owner. Can the statute be got around in this short, easy and novel manner ? The *Statute of Frauds*, 29, *Car.* 2, *ch.* 3, by its first, second and third sections, prevents the *creation* of any estate or interest in lands, &c., except by writing, &c.; and by its fourth section, " no action shall be brought on any contract or sale of lands, tenements or hereditaments, or any *interest in or concerning them*," unless the contract is in writing, &c.; and by the seventh section, "all *declarations* or creations of trusts, or confidences of any lands, &c., shall be manifested or proved by some writing ; except by the eighth section, where a trust or confidence shall or may arise by implication of law." *Browne on Statute of Frauds, sec.* 3, *p.* 2, *sec.* 4, *p.* 116, *sec.* 7, *p.* 78.

This Statute was intended to hedge around land against all attempts to affect the owner's rights in law or equity, by parol declarations or contracts. *Browne on Statute of Frauds, sec.* 5. It can't be pretended that any estate was *created* in White under the first three sections, neither had he any right of *action* under the fourth section, which embraces all contracts for any interest, legal

or equitable in land, or anything relating to or concerning the land or the title to land. *Browne on Statute of Frauds*, secs. 229, *and seq. to* 268; *Duvall vs. Peach*, 1 *Gill*, 172, 181.

Neither a right of action or defence, or any benefit whatever, can spring out of a verbal contract of any kind, covered by the Statute. *Browne on Statute of Frauds*, sec. 131; *Carrington vs. Roots*, 2 *Mees. & Wels.*, 248; *Scorell vs. Boxall*, 1 *Younge & Jer.*, 396; *Dugan vs. Gittings*, 3 *Gill*, 161–164.

Neither can a trust or confidence be set up for the appellant's intestate under the seventh section, by parol. The only cases excepted, are resulting trusts under the eighth section, and they are to be enforced in equity and not at law. Let us see if a trust results in this case, even in a Court of Equity. It is well settled, that the party setting up the resulting trust, must establish by clear and strong proof that he bought the land for himself, and paid for it with his own money, either in whole or some definite proportion, at the time of the original transaction. *Browne on Statute of Frauds*, secs. 84, 89, 95; *Dorsey vs. Clarke*, 4 *Har. & Johns.*, 551; *Hays vs. Hollis*, 8 *Gill*, 357; *Faringer vs. Ramsay et al.*, 2 *Md. Rep.*, 365; *Hollida vs. Shoop*, 4 *Md. Rep.*, 465; *Greer vs. Baughman*, 13 *Md. Rep.*, 257; *Brawner vs. Staup*, 21 *Md. Rep.*, 328; *Sewall vs. Baxter*, 2 *Md. Ch. Dec.*, 447; *Bottsford vs. Burr*, 2 *Johns. Ch. R.*, 405.

And although verbal declarations of the alleged trustee are admissible to prove the trust, they are of little weight against his legal title when not confirmed by the *original facts* of the transaction. *Lench vs. Lench*, 10 *Ves., Jr.*, 518; *Leman vs. Whitely*, 4 *Russ. Ch. R.*, 423. And after the death of the alleged trustee, such verbal declarations, if admissible at all, are entitled to much less weight than if he were alive. *Browne on Statute of Frauds*, 100; 2 *Story's Eq. Jur.*, sec. 1201, *and note* 2;

*Lloyd vs. Spillett,* 2 *Atkyns.*, 150, *note* 2.   And a partnership in lands, or the profit of lands, is embraced within the Statute ; but in this case there is no proof of a partnership or any other connection between White and Devecmon, in reference to this land.   *Smith vs. Burnham,* 3 *Sum. C. C.,* 460 ; *Black vs. Black,* 15 *Georgia R.,* 445 ; *Dale vs. Hamilton,* 5 *Hare Chy.,* 369.   In this case there is no payment for the land,—no work done on the land,—no agreement about it, or relating to it—no partnership— no fact done to raise a trust or interest, or base a right upon, or support a promise.   In equity, White could not advance the first step to establish a claim.   Is there any magic in the count for money had and received, by which half the land can be taken from Devecmon at law ?   Can the fact, that the land is turned into money, make any difference in the rights of the parties?   Is the claim of White to the money arising from the sale of the land, any higher than his claim to the land itself?   *If the land was Devecmon's, the money received for it is his ;* White could not say, *the price of Devecmon's land was money received for White's use.   Milehan vs. Eicke,* 3 *Mees. & Wels.,* 407 ; *Clarence vs. Marshall,* 2 *Cr. & M.,* 495.   In *Bottsford vs. Burr,* 2 *Johns. Ch.,* 404 ; *Green vs. Baughman,* 13 *Md. Rep.,* 257 ; *Smith vs. Burnham,* 3 *Sum. C. C.,* 435 ; *Steere vs. Steere,* 5 *Johns. Ch. R.,* 1 ; and *Winn and Ross vs. Albert,* 2 *Md. Ch. Dec.,* 169 ; and *Vanalstine vs. Wimple,* 5 *Cowen,* 162, and numerous other cases, the land was converted into money, but the parties claiming the money were held to the same rules as if they were claiming the land.   Could they have recovered the money in assumpsit, and evaded the Statute of Frauds?   If they could not make out their claim in equity, how could they succeed at law ?   Even if the Court erred in rejecting the appellant's prayers or granting the appellee's, this Court will not reverse the judgment, where the record shows the appellant could not be benefitted by it, and has no

case. *Hanson vs. Campbell's Lessee*, 20 *Md. Rep.*, 223, and cases there cited; *Benson & Trundy vs. Atwood*, 13 *Md. Rep.*, 20; *Chew's Adm'r vs. Beall*, 13 *Md. Rep.*, 348.

BOWIE, C. J., delivered the opinion of this Court.

This appeal is taken by the plaintiff below from the rejection of her prayers and the granting of those offered by the appellee. As the latter refer to the pleadings and evidence in the cause, it is necessary to state their nature and substance briefly. The *narr.* consisted of two counts: The first for money had and received by Thos. Devecmon in his lifetime, and payable to Thomas White in his lifetime, and by Coombs as executor since his death. The second, for money had and received by *Coombs as executor of Devecmon*, since his death, to and for the use of the appellant, as administrator of White. To which the defendant pleaded—

1st. That Thomas Devecmon in his lifetime never was indebted as alleged.

2d. That defendant never was indebted as alleged. On which issues were joined.

In support of the action, among other things, the plaintiff proved by a competent witness, that in the month of November, 1864, the defendant's testator came to the house of the plaintiff's intestate during his absence from home, and asked if he could get into Mr. White's office, and then said that he had sold a tract of land to Mr. O'Hern for $5,000, and that he wanted to get the papers to draw the deed; that Mrs. Devecmon further said, that her (witness') father was interested in the matter, for he was entitled to one half of the $5,000. That afterwards witness, by her father's directions, went to Devecmon's office to see him about it. He then told her that $1,250 of the money would be paid the next day, and that he would deposit the half of it in the bank for her father. The plaintiff proved by M. P. O'Hern, that he bought of

Thomas Devecmon in the month of November, 1864, a tract of land called "Mount Atlas," for $5,000, $1,250 of which he paid to Thomas Devecmon before his death, and gave a draft for $1,250, which was paid to Mr. Coombs, as executor, and the balance was secured by a deed of trust to Wm. Devecmon ; the title of the tract was conveyed to witness' daughter.

The appellee, to maintain the issue on his part gave in evidence a certificate of survey of a tract of land called "Mount Atlas," dated in May, 1864, for 47½ acres, on an escheat warrant, issued to Thomas Devecmon ; a deed, dated 21st Nov., 1864, from Thomas Devecmon, to S. O'Hern for the same land ; a deed of trust dated 13th Dec., 1864, from S. O'Hern to Wm. Devecmon, to secure to Thos. Devecmon certain sums therein mentioned. The appellant further proved by Wm. Devecmon that his brother Thomas, a short time before his death, gave him, the witness, certain papers from which to write several deeds ; among others, the deed to Miss O'Hern ; that he did not then give him the name of the tract, but Devecmon told witness that White had a half interest in the land to be conveyed by that deed. The prayers of the respective parties are founded upon this evidence.

The appellant's first prayer affirms, that if the jury believe that Thomas Devecmon made the declarations testified to by the daughter of Thos. F. White, and that he received the sum of twelve hundred and fifty dollars from O'Hern, on account of the land, they may find for the plaintiff, for one half of the sum so received by Devecmon.

The second, that if in addition to the above facts, they find that the defendant (the appellee) after the death of Devecmon, received on account of said purchase money, the further sum of twelve hundred and fifty dollars, then they may find for the plaintiff one half of said further sum of $1,250.

The third, that if they believe from the evidence, that

Thomas Devecmon received the sum of $1,250 in his lifetime, and *that one half thereof belonged to Thomas F. White*, the plaintiff is entitled to recover one half of said sum so received by Thomas Devecmon.

The appellee's prayers, reciting the evidence of title in the tract called "Mount Atlas" from the State to Thos. Devecmon, and from him to Miss O'Hern, asked the Court, to instruct the jury, that if they believed the same, "and that part of the purchase money of said tract under said deed is sought to be recovered in this case," then the plaintiff cannot recover.

The second, in addition to the facts stated in the first, reciting the testimony of Miss White, and of Wm. Devecmon and the receipt of the several sums by Thos. Devecmon in his lifetime, and the appellee, his executor, since his death, further instructed the jury, that the appellant could not recover under the pleadings and evidence in the cause. The question raised by the first and second propositions of the appellant, and those of the appellee, is purely, whether the proceeds of land can be recovered in an action for money had and received, upon oral proof of the right of the plaintiff, without any note or memorandum in writing.

It is contended on behalf of the appellee, that it is an evasion of the Statute of Frauds, which prohibits the creation of any estate or interest in lands, except by writing, and actions on any contract or sale of lands, or any interest in or concerning them, unless the contract is in writing, and all declarations or creations of trust, by parol. 29, *Char. II.*, *ch.* 3, *secs.* 1, 2, 3, 4, 7. It seems impossible to escape from the force of this objection. The subject matter, or consideration, for which the testator of the appellant, would in law be under an implied obligation to pay to the appellee, is proved to be the proceeds of land; the right of action (if any) arises, then, on a contract or sale of lands, or some interest in or concerning them. This contract is not executed, but executory. Its whole effect

White, Adm'x, *vs.* Coombs, Ex'r of Devecmon.

depends upon the force to be given to the evidence offered to support it, and that rests exclusively in memory. To allow such contracts to be established without writing, would virtually abolish all the restraints designed to be imposed by the Statute. *Vide* 2 *Greenleaf Ev.*, 120; *Browne on the Statute of Frauds*, 115; 1 *Chitty's Pleadings*, 352. The third prayer of the appellant, as an abstract proposition, is entirely correct, but when connected with the facts proved in the cause, it would have been misleading the jury to have granted it. The appellee's prayers presented the law as applicable to the evidence and pleadings. "The Statute of Frauds does not declare that the contracts embraced by it, shall be illegal or void, unless put in writing. It does not in any way affect their substance or ingredients, but simply prescribes as a rule of evidence, that in all cases, where they are sought to be enforced, oral proof of them shall not be received. An agreement, therefore, which was legal and actionable previous to the Statute, is legal since and notwithstanding the Statute, and is also, actionable or enforcible if the proof of it be such a writing as the Statute requires. In many cases the legal effect will indeed be the same as if the Statute had declared the promise or contract void. This will be the case in all instances where the promise or contract remains executory on both sides, and an action is brought to enforce it. Here, although it is not strictly correct to say that the contract is void, yet, as the same legal consequences would result from it as if it were void, it would not be erroneous for a Court to decide it to be so." *Browne on the Stat. of Frauds, sec.* 115. The appellee's prayers in effect declare, that no right of action accrues to the appellant from the evidence, which can be enforced under the pleadings in the case; these being correct in our opinion, it is unnecessary to inquire into the question of misjoinder of causes of action. The judgment below will be affirmed.

*Judgment affirmed.*

(Decided 17th July, 1868.)