EDWIN M. WILMER

*vs.*

CHRISTOPHER C. DUNN, ET AL.

*Deeds: resulting trusts; creditors' rights; no evidence of fraud.*

Two sons had paid for leasehold property through a building association and had the deed put in their mother's name; the mother told the father that she was going to convey the property to him, and that he was then to deed it over to the sons, as they had paid for it; the reason she gave was that, if she left it away from her husband, people might think that friction had existed between them; the wife's deed to the husband was executed on a Saturday; the wife died Sunday, and on Monday the father's conveyance to the sons was put on record; there was no evidence of any intention on the part of the father to hinder or delay his creditors by his deed, and under the circumstances it was held that a bill filed by certain ones of his creditors to set the deed aside should be dismissed.  pp. 361-362

*Decided December 5th, 1918.*

Appeal from the Circuit Court of Baltimore City. (SOPER, C. J.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, BURKE, THOMAS, PATTISON, URNER and STOCKBRIDGE, JJ.

*E. M. Wilmer,* for the appellant.

*Benjamin L. Freeny,* for the appellees.

BOYD, C. J., delivered the opinion of the Court.

The appellant filed a bill in equity against the appellees to set aside a deed of a leasehold property made by Christopher C. Dunn, Sr., to his two sons, Joseph B. Dunn and Christopher Dunn, Jr., and to require the Patterson Park Permanent Loan and Building Association of Baltimore to file an account showing the amount borrowed on a mortgage on said property, the payments made thereon and the balance due. The bill also contains a prayer for a sale of the property to satisfy the claim of the plaintiff and other creditors of Christopher C. Dunn, Sr., participating in this proceeding, and one for general relief.

It alleges that the plaintiff obtained a judgment against Christopher C. Dunn on July 27, 1906, for $59.88, with interest from April 24, 1894, and costs; and that on the 10th of January, 1916, there was recorded an assignment of a leasehold property known as No. 970 North Collington avenue in Baltimore City from Amelia A. Dunn to Christopher C. Dunn, Sr., dated January 8th, 1916, and that, with intent to hinder, delay and defraud the plaintiff in the collection of his said claim, said Dunn, possessing no other property at said date nor since subject to execution, in combination and collusion with his two sons, Joseph B. and Christopher, Jr., did on the 11th day of January, 1916, fraudulently convey said leasehold property to his said two sons. It is further alleged that on December 6th, 1909, Amelia A. Dunn gave a mortgage to the Patterson Park Permanent Loan and Building Association on said property, which has been paid off to within a small balance thereof.

Christopher C. Dunn, Sr., filed an answer, by which he denied that the plaintiff was such creditor as would entitle him to the relief prayed. He admits that there is a judg-

ment of record as alleged, the validity of which, however, was then being inquired into in another proceeding in that Court. He also admitted the assignment to him of the leasehold property, but averred that it was conveyed to him for the sole purpose of changing the title thereto from his wife to their sons, as was afterwards done, and he denied that the conveyance to his two sons was to hinder and delay his creditors, but was made in furtherance of the purpose to change and convey the title, and "that his *seisin* therein was merely temporary and that he never had any beneficial interest in said property." The Building Association filed an answer, stating that the mortgage to it was for $520.00, and that $315.00 had been paid thereon, leaving a balance of $205, with interest from March 7, 1917.

A decree *pro confesso* was taken against the two sons, and general replications were filed to the answers of Christopher C. Dunn and the Building Association. The case was set for hearing and testimony was taken in open Court. Before beginning the taking of the testimony the solicitor for the defendant asked the Court to strike out the decree *pro confesso* and to adopt the answer of the father as the answer of the sons. The Court said, "Very well," and the solicitor for the plaintiff said, "Without delaying the Court, I will ask the Court to consider a general replication filed to the answer so as to have the matter at issue." The deeds and the judgment were offered by the plaintiff and testimony was begun. The action in reference to the decree *pro confesso* and the answer was irregular, and not in accordance with section 152 of Article 16 of the Code, but as there was no objection to it at the time—it being evidently done to prevent delay—and no harm was done thereby, we will proceed on the theory that the decree was duly stricken out and all errors waived in reference to it, for, although we do not find in the record any order striking out the decree, the conduct of the parties before the Court must be treated as a

waiver of more formal procedure, especially as no harm was or possibly could be done.

After hearing, a decree was passed dismissing the bill of complaint and requiring the plaintiff to pay the costs. An appeal was entered from that decree, "and from all previous adverse orders of this Court." The plaintiff called as a witness an officer of the Building Association. Some question was raised about $150 which had been withdrawn from the Building Association, for which judgments were entered against the two sons after the property was conveyed to them—the money being used to pay for a sewer and some improvements or repairs to the property—but in view of our conclusions as to the bill we will not stop to consider those judgments. Christopher C. Dunn, Sr., was then called by the plaintiff and he testified in chief that he owned no property other than that conveyed by the deeds. On cross-examination he said that he held the property "in the capacity to make it over to my two boys. I held the property from about 9 o'clock Saturday night until Monday. My wife died Sunday night at 11 o'clock." He was asked: "How did your wife come to leave that property to you?" That was objected to, the objection was overruled and an exception noted. His answer was: "Why, the way she done it, the understanding was that the boys had helped to pay for it and put the money up for it and she was going to leave it to me—she talked it over one day with me and she said, 'I am going to make it over to you.' I said, 'No, don't do that.' She said, 'If I don't do it it will look like there was friction between you and me and it will create talk. I will make it over to you and you can make it over to the boys.' " He then said, over the objection of the plaintiff, that that was the reason it was done in that way.

Mr. Dunn was afterwards called by the defendants, when he testified that he had never paid anything on the property, that his wife purchased it through the Building Association and she and their two sons had made the payments on it,

that his wife had a store. His testimony then proceeded as follows: "Q. How did she come to make this deed to you on January 8th, 1916? A. Sometime in November we were sitting at the table and she said to me, 'I won't be here Christmas.' I said, 'What is the matter? What are you talking about?' She said, 'I am going to make that house to you and you make it over to the boys.' I said, 'No, there is no use paying twice for one thing.' She said, 'If I don't make it over to you people will think there was some friction between us, I will make it to you and you make it over to the children. They put up the money for it and put the money into it and they are entitled to it. Q. That is the reason she made this deed to you? A. Yes. Q. And that is the reason too that you executed this deed to the boys on January 11th, 1916? A. Yes, Saturday night she executed the deed and next day was Sunday and of course I could not until Monday make it over to the boys."

No objection appears in the record to that evidence. Joseph Dunn, who was called by the defendants, testified that he "put up the $50 and put up some more money for signing the deed and different things," and that he had mostly paid the association. We understand that the $50 was the first payment made on the property. He also testified, without any objection being noted, as follows: "Q. Did you hear this discussion between your mother and father? A. Often I heard it, a couple of times. Q. Just tell the Court what your mother said to your father about transferring the property? A. Well, she always thought that it was right that it should go to him, but he didn't want it that way. He wanted us to have it because he always said he would die before she would, but it turned out differently. Q. But you did put up the money for the property and pay for the association? A. Yes. Q. Did you hear your mother tell your father to make the deed to you boys? A. Yes."

Christopher Dunn, Jr., said that his brother Joseph put the money up when the property was first bought, and that

he and his brother paid the association after that, that since his mother's death he had paid it. He was asked whether he knew anything about the arrangements, or the trust that his mother imposed upon his father at the time she deeded the property, and replied: "I was not there at the time of my mother's death." The judgment against Dunn, Sr., relied on in this case, was held to be valid in the case of *Dunn* v. *Wilmer,* 131 Md. 494. It was not recorded with the clerk of the Superior Court until January 12, 1916—the day after the deed by Dunn, Sr., to his two sons. The consideration mentioned in each of the two deeds was, "the sum of five dollars and other good and valuable considerations." The one from Mrs. Dunn to her husband was recorded January 10th, 1916, and the other one on January 11th, 1916.

Inasmuch as Christopher C. Dunn, Sr., when called by the defendants, and Joseph B. Dunn testified without objection to what we have stated above, the exceptions to the testimony of the former in reference to why his wife conveyed the property to him would not seem to be very material. But there can be no foundation for the objection on the ground that the alleged trust was created by parol, and was not referred to in the deed or other writing. In *Collins* v. *Collins,* 98 Md. 473, the appellee, who was the widow of Michael J. Collins, filed a bill in equity against his two daughters, who were appellants in that case, and his executor, to set aside a deed made by Michael J. Collins to his two daughters which conveyed certain leasehold property in Baltimore City, on the ground that it was fraudulently made on the eve of their marriage to deprive her of her marital rights in his estate. The two daughters alleged that at the time of the conveyance of the property to their father by their uncle, John W. Collins, the latter was about to submit to an operation from which it was believed death would ensue, and the conveyance was made upon the distinct understanding and agreement between the parties that if their uncle recovered their father was to reconvey the property to him, but

if he died, their father was to convey it to them; that their uncle did die and the conveyance from their father to them was made in pursuance of that understanding and agreement, and he was never at any time the owner of any beneficial interest in said property. The consideration named in the deed was "five dollars and natural love and affection."

JUDGE PEARCE, in speaking for the Court, said: "We will consider first therefore what interest Michael had in this property. It may be conceded that if Michael accepted the conveyance from his brother upon the verbal understanding above set forth, then the conveyance by him to the appellants would be regarded as made in performance of such agreement, and would be upheld in equity as not affected by the statute of frauds. *In re Duke of Marlborough,* 2 Ch. Div. 133; *Giffen* v. *Taylor,* 139 Ind. 573; *Larmon* v. *Knight,* 140 Ill. 232; *Phelps' Jurid. Equity,* Sec. 210. But such a trust must be clearly established, and the proof in this case falls far short of what is required."

Although the Court reached the conclusion stated as to the proof in that case, the principle was established. Under the evidence in this case there can be no doubt that the two sons of Dunn could have required him to convey the property to them. The only evidence on the subject in the record is to the effect that the property was to be conveyed by Dunn, Sr., to his sons, and he did so convey it on Tuesday, January 11, 1916, after it had been conveyed to him the previous Saturday night by his wife who died Sunday night. If there was any intention to hinder, delay or defraud the appellant or any other creditor of Dunn by his deed to his sons, or there was any thought of his creditors having any rights in the property by reason of the plan adopted, it would be difficult to understand why two deeds were made instead of having the wife convey it directly to the sons, as she undoubtedly had the right to do. If, as the evidence shows without contradiction, the sons had made most of the payments which had been made on the property, it was not only reasonable

but just that they should have it, and the only reason that appears in the record for it not being conveyed directly to them, instead of through their father, was what might be termed a sentimental, rather than a businesslike one—that the wife thought that such a course would look like there was friction between her and her husband and it would create talk.

It is stated in the record that the objection made by appellant's solicitor to the question asked Dunn, Sr., when asked on cross-examination, "In what capacity were you holding the property at 970 North Collington avenue on January 8, 1916 ?", was that "Dunn is estopped from denying ownership, as in the bill filed by him in *Dunn* v. *Wilmer,* for an injunction he made the ownership of the property the basis of his application." That is the case referred to above, reported in 131 Md. 494. The bill, which was filed on the 19th of June, 1916, was read in evidence in this case. The attorney for the appellees stated at the time that that was an error of the solicitor who drew the bill. The deeds from Mrs. Dunn to Mr. Dunn and from him to his sons had then been on record for over five months. The latter is the same deed the appellant is now seeking to have set aside, but in the case of *Dunn* v. *Wilmer, supra,* Dunn sought to have two judgments recovered before magistrates declared void and the execution thereof enjoined. One of them was for $91.40, with interest from January 11th, 1894, and costs. That was the one upon which it was alleged that a writ of *fieri facias* had been issued and the sheriff had levied upon his interest in this property and was about to advertise the same for sale, and that is the judgment which the Court declared to be a nullity. The one now in controversy was not disturbed, as this Court held that Dunn's remedy was by appeal from the judgment of *fiat executio,* and not in equity, and sustained the lower Court as to its conclusion in reference to that judgment. Nothing, therefore, was done in that case to the prejudice of Wilmer in reference to this judgment.

We notice that in the opinion (page 498) in *Dunn v. Wilmer,* it is stated that the judgment for $91.40, with interest, etc., was recorded on the 11th day of January, 1916, in the Superior Court. The theory of Wilmer in issuing the execution on that judgment may have been that as that was the same day the deed from Dunn to his two sons was made and recorded the judgment was a lien on the property, as it was conveyed to Dunn by the deed of January 8th, 1916, and recorded January 10th, 1916. But however that may be, there is nothing whatever in the case to show that the sheriff had not levied on what was claimed to be Dunn's interest in that property and as he contended that both of the judgments were void he had the right to seek the aid of a Court of equity to have them declared null and void and to contest Wilmer's right under them to levy on that or any other property. There is therefore no estoppel by reason of what was done in that case.

It follows from what we have said that it is unnecessary to discuss other questions, and the decree of the lower Court must be affirmed.

*Decree affirmed, the appellant to pay the costs.*