## BRENDER *v.* STRATTON.

1. FRAUD—DEEDS—FALSE REPRESENTATIONS—ESSENTIAL ELEMENT.
    An essential element of a fraudulent representation to induce one to sign a deed is a false representation as to an existing fact.

2. DEEDS—DELIVERY—PRESUMPTIONS.
    Delivery of a deed may be presumed from the fact that

On delivery of deed to third person or record by grantor as a delivery to the grantee, see notes in 54 L. R. A. 865; 9 L. R. A. (N. S.) 224; 38 L. R. A. (N. S.) 941.

it was recorded by one of the grantors and produced by the grantee at the hearing.

3. TRUSTS—PAROL TRUST—DEEDS—ADMISSIONS.

A parol trust in lands under an absolute deed may be recognized by a trustee in pleadings or other written concession relating to it.

4. SAME—COURT MAY DECLARE TRUST ADMITTED.

Where, in a suit by a widow and the guardian of her minor daughter to set aside a deed by herself and deceased husband on the ground of fraud, proof of fraud failed, but defendant admitted the fact that she held the property so conveyed in trust, although the deed was absolute on its face, stating in detail the facts of her trusteeship, and offering to comply therewith, and, on appeal by both parties, on the hearing, the attention of this court was called to defendant's offers or concessions by her counsel and the grievance urged against the decree appealed from was that the trust declared by the court below was not the trust conceded, the court may take defendant at her word and declare a trust such as she admitted, and the decree of the court below will be modified to conform therewith.

Cross-appeals from Kalamazoo; Weimer (George V.), J. Submitted June 23, 1921. (Docket No. 69.) Decided October 7, 1921.

Bill by Jennie E. Brender and another against Anna E. Stratton to enjoin an action of ejectment and to set aside a deed. From the decree rendered, both parties appeal. Modified and affirmed.

*Jackson, Fitzgerald & Dalm,* for plaintiffs.

*Charles Thew* and *Clare E. Hoffman,* for defendant.

STEERE, C. J. Plaintiffs are the widow and guardian of the only child of George B. Brender who died July 27, 1911, at his home in Kalamazoo county, Michigan. He was married to plaintiff Jennie E. Brender in 1899. He then owned a farm of 120 acres in the township

of Comstock in said county, which is the subject of this litigation. Immediately upon his marriage he and his wife settled upon said farm where they continued to make their home and live together during the remainder of his life, occupying, cultivating and claiming it as their own. Their only child, Mary E. Brender, was born there July 29, 1906. Following his death and up to the time of the hearing in this case his widow and their daughter, who were his sole heirs at law, continued to make their home upon said premises as before under claim of ownership, the same being cared for and managed by the widow.

Defendant, Anna E. Stratton, is an elder sister of deceased, a widow well along in years, of intelligence and education, having been a school teacher in her younger years, well versed in business methods with some knowledge of and experience in conveyancing. She was in friendly family relations with her brother and his wife during his lifetime and while she was at their home on the farm now in dispute, shortly after the birth of their child, in the summer of 1906, she drew up, at her brother's request as she claims, a warranty deed of their farm running to herself as grantee, which they signed and acknowledged. The instrument she prepared is in form a warranty deed conveying to her for a stated consideration of $7,800 the 120 acre farm in question, correctly described. It bears date August 9, 1906, is signed by George B. Brender and Jennie E. Brender, in the presence of two subscribing witnesses, was acknowledged before a notary public on October 1, 1906, and recorded in the office of the register of deeds of Kalamazoo county on the same date. The occasion for this conveyance and attending circumstances are in dispute.

On August 28, 1917, defendant commenced ejectment proceedings to evict plaintiffs and possess herself of this farm upon which they had been living under

claim of ownership up to that time.    This bill was shortly thereafter filed asking that said deed of August 9, 1906, running to defendant as grantee be held for naught, and she required to surrender and discharge the same from the public records; also that in the meantime proceedings in her ejectment suit be stayed until the further order of the court, concluding with a general prayer for relief.

The grounds for relief stated by the widow in the bill of complaint are in substance fraud, want of consideration and non-delivery.    Execution, acknowledgment and recording of the instrument are admitted. It also alleges that deceased was influenced to have the deed made and recorded under an obsession that it would protect him from threatened litigation over an unjust claim about which he had been harassed and worried, and his wife having perfect confidence in her husband joined him in the conveyance with the understanding that it would not be delivered or any rights transferred to the grantee by it.

Defendant's answer traverses plaintiffs' bill with admissions and denials, in substance claiming the deed was for a sufficient consideration, without fraud, duly delivered, and in all particulars a valid conveyance to her of the property of which she claims to be the absolute owner in fee.

Plaintiffs' charge of fraud is based on the claim, as stated in their counsel's brief, that in order to induce Mrs. Brender to sign the deed defendant "represented to her that she was executing or had executed a codicil to her will, so in case anything happened to her the property would come back to the grantors within five years and showed her a writing to that effect."    This is scarcely consistent with her statement:    "I did not have any talk with Mrs. Stratton with reference to the making of this deed before it was made.    *    *    *    I don't think we had any talk about the property."

She did also state, "she showed me a codicil in the will and read it, * * * she had in her will at the time, if anything happened to her in five years, that the property should be transferred back to Mr. Brender and I. I read this in her will; she handed it to me." If so, defendant certainly did not thereby induce her to sign the deed by a false representation to her as to an existing fact, which is an essential of a fraudulent representation. Defendant denied this transaction *in toto* and asserted she never had a codicil to any of her wills, but frankly said that after receiving the deed she made provision in her will relative to the property as her brother had expressed his desires to her. Mrs. Brender's testimony that the deed was never delivered and was kept in her husband's possession amongst her husband's papers until his last sickness but could not be found after his death, is met not only by the strong presumption of delivery from its having been recorded by a grantor and brother of the grantee (*Griffin* v. *Hovey,* 179 Mich. 104) and production by defendant at the hearing, but by the latter's positive testimony of its delivery to her by her brother and the attending circumstances.

In plaintiffs' bill of complaint they state in substance that Mrs. Brender was led to sign the deed through representations of her husband that he was being harassed and worried "over a threatened suit" which might be avoided by their signing and recording said deed—in other words a fraudulent intent and attempt to hinder and delay a claimed creditor. If so, she was knowingly a party to the attempted fraud and is in no position to be granted relief by a court of equity. Defendant denies any knowledge of that element in the case, and states entirely different reasons given to her by both grantors for making the conveyance.

In a written opinion the trial court sustained defendant's contentions upon the questions of delivery, fraudulent representations on her part, etc., with ample supporting evidence, we think, and on the record as a whole concluded as follows:

"She should be adjudged to be a trustee of the property in question for the use and benefit of the minor child during the lifetime of plaintiff, if defendant shall so long live, and if not, then some other person should be appointed by this court in her place and stead. The trust should be executed under the direction of this court and should terminate upon the death of plaintiff, at which time the legal title should vest. The defendant should be required to file a proper bond with the clerk of the court for a faithful performance of her trust. The amount of the bond, and the question of costs will be determined upon the settlement of the decree."

From a decree in harmony with such holding both parties have appealed.

If oral evidence were admissible to establish an express parol trust there is an abundance to sustain in most respects that found by the court, but both the statute of uses and trusts and that on fraudulent conveyances interpose obstacles to an easy disposition of the case on the oral evidence alone (3 Comp. Laws 1915, §§ 11565-11575, 11975).

This case is unique in certain particulars. Defendant's pleadings are well prepared by competent counsel in full denial to cover an absolute defense, but, while asserting an absolute legal title and right as a matter of law to do with the property as she sees fit, fully and repeatedly testifies that she claims no beneficial interest in the property beyond a small indebtedness for money loaned her brother, and that she in truth and fact holds title to the property under a sacred trust for the benefit of his family, the reason

for and nature of which she discloses in her lengthy direct and cross-examinations.

The Brender family of her generation consisted of three girls and three boys raised on a farm in that locality; their parents were pioneers, manifestly industrious and thrifty, who first settled upon an 80-acre farm and during their lifetime accumulated much other land with the assistance of their children who were likewise industrious and helpful. It was the ambition of their father to acquire sufficient land to give each of his children at least 40 acres. They were apparently clannishly inclined. The family held together and worked in common for accumulation of property longer than customary. As the years went by they slowly bettered their financial condition and became well to do. Defendant, who was one of the older children, worked out, acquired a better education than the others, became a school teacher and was thereby a more helpful member of the family. She later married a Mr. Stratton who was a prosperous man of affairs, at one time sheriff of his county, giving her opportunity to acquire further experience and knowledge of business matters. When the elder Brender's estate was administered the children agreed to keep the Brender homestead property together as near as possible, each owning a portion, and she interested herself with the others to that end. When George B. and another younger brother started out for themselves, she was able to and did help them financially and otherwise. After George married she visited at his home and was on friendly terms with his wife. She testified that about the time, or shortly before, their daughter Mary was born, both George and his wife, who apparently had talked the matter over together, interviewed her about deeding this property to her to hold for them and their child when

they were done with it. Her account of the proposal is in part as follows:

"We were in her home upstairs. She (Jennie) called me to come upstairs and I came up and she showed me some of her work and then she says, 'Now, I want to talk with you about something.' She said: 'We were talking'—meaning herself and George—they were talking about making a deed to me of the place. This was before the child was born. She explained in case she did not live and the child lived, she wanted me to take this property and look after the child's interests. * * * She spoke about having heart trouble and she spoke about her mother had heart trouble at that time. She spoke about George having poor health."

On her direct-examination she was cautioned by her counsel that she could not tell of conversations with her deceased brother, but on cross-examination plaintiffs' counsel went into the subject quite fully and she then testified among other things:

"He said 'my health is not good, it is pretty poor and I am having real bad spells and Jennie has heart trouble and we have decided we want the property to go where it came from, to the Brenders, where it came from.' As I understood they were talking of dividing their interests. * * * I had another talk with him as to what I was to do with the property. I don't recollect all the times. Shortly before he died he was on his bed and I was sitting on the side of the bed talking with him. That day was the last time he spoke about it. He says, 'About this property, I want you to hold it as you think best, I want Jennie provided for as long as she is mine. If she marries and is some one else's than mine I don't want you to let her suffer. I want it to go to the little girl and I want you to do it in such a way that she can't get rid of it or any one get it away from her. If she should die I want it to go back to the Brenders, where it came from.' That is the last talk we had. Previous talks had been along that line. I understood that was my mission. * * * I am giving my

brother's words as near as I can. He was always very mindful about the little girl. He wanted his wife taken care of as long as she was his widow; that is, if she came to need."

She also repeatedly testified that she had made a will providing that the property should go back to her brother if she died before he did, and after his death another providing substantially as detailed in her account of the last conversation with her brother. At various points scattered through her testimony this story is repeated in substance.

The reason for the commencement of this action stated by counsel to have been the approaching expiration of the statute of limitations which in view of differences arising between deceased's widow and defendant during the probation of the estate might bring other complications into the case.

During redirect-examination by her own counsel she said:

"I am willing at the present time to make provision of this Comstock farm in the same manner as I have made it, as described in the will. I have no disposition whatever to use it for my own personal interests."

The testimony shows that proposals to that effect had been made by her or her counsel to plaintiffs, which were rejected under the contention that the deed was absolutely void and the property belonged to plaintiffs as the heirs of George B. Brender. Near the close of the case the following occurred in open court in the presence of defendant and opposing parties:

"*The Court:* Before we took a recess, Mr. Hoffman, you said something in behalf of your client, to the effect of transferring this property to a trustee under certain conditions, who do you mean by a trustee, by whom do you propose to have the trustee named?

"*Mr. Hoffman:* For instance, the judge of probate of Allegan county.

"*The Court:* Why the probate judge of Allegan county, the property is in this county and the child is in this county, lives here.

"*Mr. Hoffman:* So our client would have something to say about the administration of the estate and have somebody who would carry out the terms of the trust, not only in letter but in spirit. There would be no object at all to transferring that property to some trustee in sympathy with the widow, having in mind the interest of the widow and the child. We would want a trustee who would look after the interest of the child and protect the child's interest, if there ever was a time when there was a conflict between the interest of the widow and the child.

"*The Court:* Where would the probate court of Allegan county have authority to appoint a trustee?

"*Witness:* I am a resident of Allegan county.

"*The Court:* The court might possibly in this proceeding. If the child is to have a guardian, it would have to be appointed by the probate court of this county.

"*Mr. Thew:* Our client claims she has been left by her brother a duty to perform and naturally she would take that more as a personal duty and watch over the child better than anybody else. It is not a bare proposition of turning over the money and land, from our standpoint; she wants to have something to say as to who the trustee would be. It is her wish that the trustee would be some one who would not be under the influence or related to the widow. As far as a bond before this court is concerned, that would cut no figure or be any obstacle, as far as I can see."

It is urged and argued in behalf of plaintiffs that the full relief asked should be granted and the deed held void *in toto* or, if not, it should be declared a mortgage for the few hundred dollars defendant testified deceased owed her, and in any event the ejectment action should be restrained under defendant's own testimony that she claims no beneficial interest and holds the title for the use and benefit of those

now in possession; and in any aspect of the case, that the decree declaring her seized in trust of the property for the minor, Mary E. Brender, should be sustained.

Standing on her claimed absolute ownership entitling her to dismissal of plaintiffs' bill as against their claim for full relief under it, defendant's counsel most earnestly pressed in argument, as their reason for appeal, the nature of the trust declared by the trial court, which is made to terminate on the death of Jennie E. Brender, and then passes absolute ownership of the property to the daughter, Mary E. Brender, without any restrictions or provisions for contingencies, contrary to her evidence in the case or any suggested concessions by or for defendant.

A careful reading of defendant's testimony, including a transcript of that taken in probate court and put in evidence, while indicating, as described by one of the witnesses, that "she is a woman who says nothing" about her private affairs, and an evident aversion to if not resentment over the inquisition she was subjected to, which tinctures her testimony in certain particulars with a lack of candor and evasion to inconsistency, yet discloses that all through her long examination, both direct and cross, she consistently insisted upon her "mission" as trustee of this property, stating the circumstances, reasons and conditions under which she received title to it, asserted that she did not "expect to get any personal benefit out of it," and disclaimed any beneficial personal interest in it.

That a parol trust in lands under an absolute deed may be recognized by a trustee in pleadings or other written concession relating to it is well settled, and it has been held that, where a defendant has testified in a signed deposition that he holds property in trust, a trust may be declared. But whether defendant's oral evidence to that effect, twice given under oath

in open court where the property in question is involved satisfies the statute we need not determine. Here we have not only defendant's testimony in detail to the fact of her trusteeship and personal concessions, but also the assent by her counsel in open court, in her presence and manifestly with her approval, as quoted above. Those offers, or concessions, were called to our attention by her counsel upon the argument in this court with no suggestion of repudiation, and the grievance urged against the decree appealed from was that the trust declared by the court was not the trust conceded and to which she testified.

This contention is well founded. We are satisfied that the court of first instance, and this court, on a hearing *de novo* in an equity case, may and should take defendant at her word and as she testified, supported by the concessions and overtures of her counsel as shown, and declare a trust such as she defined and admitted.

While defendant stated her trusteeship in varying language, she referred particularly to her will as containing what she conceived and admitted was her duty under it. No will was produced in evidence, but she testified that in each will since taking title to the property she had as she remembered made a provision in regard to this property as follows:

"Before the death of my brother George, I provided that the use of that property should go to him during his lifetime and after his lifetime to his daughter, Mary E. Brender, and, if she died without children, it should revert or go back to the Brenders, that was at his request. * * * I also made provision for the care and support of Jennie Brender, if she needed it, always. After George died, as near as I can remember, I made a will giving the use of this property to the little girl, Mary E. Brender, when she became of age. I think I put it at 35 years. Later I changed it to 30 years. She was to have the

216—Mich.—12.

use of it during her lifetime and, if she had children, it was to go to them. If not, it was to go back to the Brenders. And I also made provision for Jennie."

The decree declaring a trust must be modified to comply in substance with the provisions as to which defendant testified, and, so modified, will stand affirmed, with costs to defendant.

MOORE, WIEST, FELLOWS, STONE, CLARK, BIRD, and SHARPE, JJ., concurred.