LOUIS EARL TROSSBACH ET UX. *v.* LEO TROSSBACH

[No. 48, January Term, 1945]

48

*Decided June 14, 1945.*

The cause was submitted to MARBURY, C. J., DELAPLAINE, COLLINS, GRASON, MELVIN, HENDERSON, and MARKELL, JJ.

*A Kingsley Love* and *Paul J. Bailey* (of *Love & Bailey*), *and John H. T. Briscoe* appeared on the brief for the appellants.

*Joseph D. Weiner* appeared on the brief for the appellee.

MARKELL, J., delivered the opinion of the Court.

This is a suit between brothers. The defendants (appellants), husband and wife, stipulated that any evidence, sufficient to bind him to any agreement with the plaintiff shall bind her; she makes no separate claims. He will be referred to as the defendant. The plaintiff (appellee) is his brother.

The plaintiff's wife, Mary, is his cousin, one of nine children of Henry Trossbach. Henry Trossbach owned a farm in St. Mary's County. He died intestate January 3, 1930; his wife had died nine months before. At his death three of his children were minors, aged nine, eleven and thirteen. At and before his death his daughter Mary and the plaintiff were living with him on the farm. After his death they continued to live there. They took care of the minor children until the girls married and the boy went into the Army. The plaintiff managed the farm and paid the taxes and other expenses.

The heirs wanted the plaintiff to get the farm. They thought he was entitled to get it because he and his wife had taken care of the younger children. Early in 1940 they agreed to sell it to him for $2,700. He asked a Mr. Longmore, who "runs a store," to "back him up." Mr. Longmore said, "if you haven't the money to buy it with, I'll buy it for you and take a mortgage against the place." Meanwhile (the plaintiff says) the defendant said, "Why not let me take it over for you?" (to which the plaintiff assented); "any time you are ready to buy it I will turn it over to you."

The defendant says, the plaintiff asked him to purchase the place and said he would buy it back for $2,700 plus improvements; there was a verbal agreement for the defendant to convey the property to the plaintiff upon payment of $2,700 plus any improvements made by the defendant.

In February, 1940, the property was conveyed to the defendants by the eight adult heirs and a trustee appointed, in an equity proceeding, to convey the other daughter's interest. The defendant paid the $2,700 for the property. The heirs agreed to sell to the plaintiff; they would not have agreed to sell to the defendant, if he had not been buying for the plaintiff. The defendant had gone to one of the heirs on Christmas and asked her to "agree to sign for [the plaintiff] to buy the place." Presumably the decree for sale of the nineteen-year old daughter's interest was based on testimony that the price

was fair. Nevertheless, the price for the property evidently was regarded as favorable to the plaintiff. Mr. Longmore must have so regarded it when he offered to lend the entire price.

The plaintiff continued in possession. He has been in possession ever since Henry Trossbach's death. On May 16, 1944, he went to work for the Government in St. Mary's County, but did not stop cultivating the farm. His son, with three hired men, is working the farm. The defendants live in Washington. Since the conveyance the plaintiff has worked the farm on a share basis, receiving half the crops. The defendant says the farm is now producing twice the amount it was in 1940. The defendant has made several thousand dollars of improvements; the plaintiff has made some improvements, worth (he imagines) around $129.

The defendant says that in 1941 the tobacco crop was very bad and the plaintiff then said he wouldn't have the property if someone gave it to him. The defendant wife says that on the day of the tobacco sales the plaintiff said, "Got nothing for the tobacco, nothing in farming," but that the plaintiff's wife "said on several occasions would like to buy the farm back [*sic*]."

In April, 1944, the defendant was offered $10,000 for the property. A little later the plaintiff expressed a desire to buy it back at the agreed price of $2,700 plus improvements. The defendant refused to carry out the agreement.

The amended bill in this case seeks to have the property declared subject to a trust in favor of the plaintiff and conveyed to him upon payment of $2,700 plus improvements. The answer is a general denial and also alleges "that the Statute of Frauds is applicable to this case." From a decree that the property be conveyed to the plaintiff upon payment of "the sum of $5,546.55 as per account filed in the proceedings," the defendants appeal.

The decree was filed November 16, 1944, the appeal January 12, 1945. The record contains an opinion of the court, filed January 26, 1945. The opinion states that

because of inexperience of the stenographer and statements of counsel "the record is not as complete as it should be." This is manifestly true of the "account" referred to in the decree. The record contains five type-written pages of itemized figures but no explanation, explicit or implicit, how "the sum of $5,546.55" was computed. As this question is not mentioned in the briefs or in the opinion below, we find no reversible error in this respect.

The defendant's contention that the plaintiff abandoned his rights under their agreement is untenable. The plaintiff did not abandon his equity in the property either by expressing momentary discouragement in 1941 or by taking Government employment in 1944. On this point the defendant's testimony is insufficient and is also contradicted by testimony of other witnesses to statements made by him since 1941, recognizing the plaintiff's right to the property.

Like a number of recent cases in this court, this is a case to establish and enforce a constructive trust of land, based on an oral agreement. In England it is held that the Statute of Frauds was enacted to prevent, not to protect, fraud; consequently a constructive trust arises when it would be a fraud to deny the oral trust and claim the land (*Davies v. Otty,* 35 Beav. 208, 213; *Haigh v. Kaye,* L. R. 7 Ch. 469, 473-474; *Boothe v. Turle,* L. R. 16 Eq. 182, 187; *In re Duke of Marlborough,* [1884] 2 Ch. 133, cited in *Collins v. Collins,* 98 Md. 473, 475, 57 A. 597; and *Wilmer v. Dunn,* 133 Md. 354, 360, 105 A. 319), *e. g.,* when land is purchased for a mortgagor from the mortgagee, but is conveyed to the purchaser. *Lincoln v. Wright,* 4 DeG. & J. 16, 22; *Rochefoucault v. Boustead,* [1897] 1 Ch. 196, 206.

In the United States what purports to be a narrower rule is generally followed. When land is conveyed upon an oral trust, a constructive trust arises if (*a*) the conveyance was procured by fraud (or otherwise wrongfully) or (*b*) the transferee was in a confidential relation to the transferor. *Restatement, Trusts,* Sec. 44; *Restatement,*

*Restitution,* Sec. 182. The original fraud may consist of an intention not to perform, and may be evidenced by the subsequent refusal to perform, together with other circumstances, such as activity in procuring the conveyance. *Springer v. Springer,* 144 Md. 465, 478-482, 125 A. 162; *Jasinski v. Stankowski,* 145 Md. 58, 61-65, 125 A. 684, 35 A. L. R. 275; *Dillfelder v. Winterling,* 150 Md. 626, 633-641, 133 A. 825; *Leupold v. Leupold,* 156 Md. 516, 517-520, 144 A. 647; *Lipp v. Lipp,* 158 Md. 207, 216, 217, 219, 148 A. 531; *Levine v. Schofer,* 184 Md. 205, 40 A. 2d 324, 328. In cases of confidential relations the rule seems to be the same as the English rule. *Rice v. Rice,* 184 Md. 403, 41 A. 2d 371, 375. Indeed, unless limited by the context, the general statement that a constructive trust arises under circumstances which render it inequitable for the holder of the legal title to retain it may be broader and less exacting than the English rule. *Grimes v. Grimes,* 184 Md. 59, 40 A. 2d 58, 60; *O'Connor v. Estevez,* 182 Md. 541, 555, 35 A. 2d 148. Professor Scott finds it difficult to see why every conveyance upon an oral trust does not show a confidential relation. *Scott on Trusts,* Sec. 44.

In this case it is not necessary to decide whether a confidential relation exists when a country brother needs money and gets it from his city brother, or to appraise all the facts and circumstances and decide whether in 1940 a confidential relation existed or the defendant never intended to perform his oral agreement—or whether this was a conveyance made as security for an indebtedness and as such gave rise to a constructive trust. *Restatement, Trusts,* Sec. 44. It is possible, and we thing preferable, to decide the case on a more direct view of the facts.

The outstanding fact is that the oral agreement which constituted an express trust for the plaintiff's benefit is admitted by the defendant in his testimony. The question, therefore, is: Does Section 7 of the Statute of Frauds prevent enforcement of this trust? We think not.

It has been so held in other states. *Brender v. Stratton,* 216 Mich. 166, 184 N. W. 486, 22 A. L. R. 728; *Kauffman v. Kauffman,* 266 Pa. 270, 109 A. 640; and *Metzger v. Metzger,* 338 Pa. 564, 14 A. 2d 285, 129 A. L. R. 683, cited in *Jacobs v. Schwartz,* 179 Md. 605, 608, 20 A. 2d 489; *Degheri v. Carobine,* 100 N. J. Eq. 493, 499-501, 135 A. 518, reversed on other grounds, 102 N. J. Eq. 264, 269, 140 A. 406. In *Jacobs v. Schwartz* a trust so admitted by the trustee was held unenforceable against a judgment creditor of the trustee; in *Kauffman v. Kauffman* the contrary was held.

The Statute of Frauds does not require that trusts shall be constituted by writing "but merely that they must be proved by some writing signed by the party who creates them; which as the statute does not specify any time, will be sufficient, though anterior, or posterior in date to the original transaction." In equity, admissions in the answer may be sufficient to establish the trust and "prove the object and intent" of a deed absolute on its face. *Maccubbin v. Cromwell's Ex'rs,* 7 Gill. & J. 157, 163, 164; *cf. Gordon v. McCulloh,* 66 Md. 245, 249, 7 A. 457. The Supreme Court, in an opinion by Chief Justice Taney, applying Maryland law in the District of Columbia, held that the memorandum required under Section 4 of the statute may be made and signed after suit brought or at the trial. *Remington v. Linthicum,* 14 Pet. 84, 92, 10 L. Ed. 364.

In *White v. Coombs,* 27 Md. 489, 501, the court, quoting Browne on the Statute of Frauds, said: "The Statute of Frauds does not declare that the contracts embraced by it, shall be illegal or void, unless put in writing. It does not in any way affect their substance or ingredients, but simply prescribes as a rule of evidence, that in all cases, where they are sought to be enforced, oral proof of them shall not be received." For present purposes it is immaterial whether or not this statement (revised in later editions of Browne) is narrower than Lord Blackburn's statement: "I think it is now finally settled that

the true construction of the Statute of Frauds, both the 4th and the 17th sections, is not to render the contracts within them void, still less illegal, but is to render the kind of evidence required indispensable when it is sought to enforce the contract." *Maddison v. Alderson,* L. R. 8 A. C. 467, 488; *cf. Williston on Contracts,* Sec. 527.

In England the "memorandum or note" of "the agreement upon which * * * action shall be brought," required under Section 4 or Section 17, must be in existence when the action is commenced; consequently the answer, admitting the contract, is not sufficient. In so holding on the earlier authorities, Lord Justice Bowen said "the objection is technical" and Lord Justice Fry remarked that the conclusion was "a somewhat singular one," making it necessary to discontinue an action and commence another. *Lucas v. Dixon,* 22 Q. B. D. 357, 362. A change in parties may be equivalent to a new action. *Farr, Smith & Co. v. Messers, Ltd.,* [1927] 1 K. B. 397, 405-407; *cf. Grindall v. Bass,* [1920] 2 Ch. 487, 491, 493. In this respect perhaps a "writing" under Section 7 may differ from a "memorandum or note" under Section 4 or Section 17. *Cf. Albert v. Winn,* 5 Md. 66, 72, 73, 74.

In *Artz v. Grove,* 21 Md. 456, 470, the court said: "The Statute of Frauds does not forbid the specific performance of parol contracts as to real estate, where the defendant admits the agreement, and does not rely on the statute as a bar. *'Quisque renuntiare potest jure pro se introducto.'* " The contract enforced was a contract to complete a purchase of land for the original purchaser and to reconvey the property to him upon repayment of the amount paid, with interest; the original purchaser meanwhile retained possession and paid rent, to be credited on account.

Mr. Miller in his Equity Procedure says: "The court will enforce the specific performance of a contract within the statute, not in writing, where it * * * is confessed by the answer of the defendant and the statute is not

relied upon as a defense. In such a case relief is granted upon the ground that as the statute was intended to prevent fraud and perjury, there can be no danger of either where the contract is * * * confessed in the answer; or upon the ground that the defendant has waived the benefit of the statute." Sec. 701. "* * * But if the parol agreement alleged by the bill should be admitted by the answer, yet if the answer insists upon the statute of frauds as a defense, there can ordinarily be no decree." Sec. 702. The latter rule (Sec. 702) has been stated or cited in opinions of this court (*Jones v. Slubey,* 5 Har. & J. 372, 383; *Hensel v. Calder,* 135 Md. 487, 494, 495, 109 A. 195; see also *Ogden v. Ogden,* 1 Bland 284, 288) and was the ground of decision in one case. *Hamilton v. Jones,* 3 Gill & J. 127, 132, 133. *Cf. Story on Equity Jurisprudence,* 14th Ed., Secs. 1041-1044; *Story on Equity Pleading,* 10th Ed., Sec. 763; *Scott on Trusts,* Sec. 47; 1 *Bogert on Trusts and Trustees,* Secs. 84, 89.

This rule, that the Statute of Frauds may be "insisted upon" even though the oral contract is admitted in the answer, was not indigenous to the statute, but rather to now forgotten lore of equity pleading. After decisions to the contrary, the rule was established more than a century after the enactment of the statute. It was based largely on the view that "calling upon a party to answer a parol agreement certainly lays him under a great temptation to commit perjury." *Rondeau v. Wyatt,* 2 H. Bl. 63, 68.

Under existing procedure, the purpose of the Statute of Frauds is to protect a party, not from temptation to commit perjury but from perjured evidence against him. The purpose of evidence is to prove facts. Admissions of a party in testifying, though in form evidence, are in essence not mere evidence, but make evidence against him unnecessary. *Cf. General Rules of Practice and Procedure,* I, Rule 1; II, Rules 1, 2, 4, 6; *Scheihing v. Baltimore & O. R. Co.,* 180 Md. 168, 169, 174, 23 A. 2d 381. We think the Statute of Frauds requires no more.

Furthermore, admissions of a party in the form of testimony would constitute sufficient "memoranda" under Section 4 or Section 17, or "writings" under Section 7, of the statute. For this purpose we think recorded testimony should be regarded as equivalent to signed depositions.

*Decree affirmed with costs.*